IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITOL JUSTICE LLC and AMERICAN
ASSOCIATION FOR JUSTICE,

            Plaintiffs,

    v.

WACHOVIA CORPORATION, WACHOVIA
BANK, N.A., WACHOVIA CAPITAL
MARKETS, LLC, WACHOVIA SECURITIES,
LLC, and SANDOR BIDERMAN,

            Defendants.

Civil Action No. 1:07-cv-02095-RCL

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Mark W. Ryan (D.C. Bar No. 359098)
Reginald R. Goeke (D.C. Bar No. 453613)
Joseph R. Baker (D.C. Bar No. 490802)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, DC  20006-1101
Telephone:  (202) 263-3000

*Attorneys for Defendants Wachovia
Corporation; Wachovia Bank, N.A.; Wachovia
Capital Markets, LLC; Wachovia Securities,
LLC; and Sandor Biderman*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.    Plaintiffs Misstate the Applicable Pleading Standard ................................................ 1

II.   Plaintiffs' Fraud and Negligent Misrepresentation Claims Should Be Dismissed .......................................................................................................... 2

      A.   The Integration Clauses Bar the Fraud and Misrepresentation Claims .......................................................................................................... 2

      B.   Plaintiffs Have Failed To Allege a Factual Basis for the Fraud and Misrepresentation Claims ........................................................................ 7

      C.   Plaintiffs Have Not Alleged Any Facts that Would Support an Inference of Knowledge or Intent ........................................................... 11

      D.   Defendants' Arguments To Dismiss the Fraud Claims Have Fully Addressed the Rate Lock Component of Those Claims ........................... 12

      E.   Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed for the Additional Reason that Plaintiffs Cannot Establish the Element of Duty ........................................................................ 14

III.  The Complaint Fails to State a Claim for Breach of Fiduciary Duty ..................... 15

      A.   Plaintiffs Must Do More than Just Assert the Existence of a Fiduciary Duty .......................................................................................... 16

      B.   AAJ Has Expressly Disclaimed the Existence of a Fiduciary Relationship ............................................................................................. 18

IV.  Plaintiffs Have Failed To State a Claim for Equitable Estoppel ........................... 19

V.   Plaintiffs' Good Faith and Fair Dealing Claim Should Be Dismissed ................... 20

VI.  Plaintiffs' Equitable Accounting Claim Should Be Dismissed .............................. 21

VII. Plaintiffs' Rate Lock Agreement Breach of Contract Claim Should Be Dismissed .......................................................................................................... 21

VIII. Plaintiffs' Unjust Enrichment Claim Is Barred by the Existence of a Contract ............................................................................................................. 23

IX.  The Wachovia Defendants Other than Wachovia Bank, N.A. Should Be Dismissed ...................................................................................................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*,
    511 F. Supp. 2d 1 (D.D.C. 2007) ................................................................................... 2

*Albrecht v. Comm. on Emple. Bens. of the Fed. Reserve Emple. Bens. Sys.*,
    357 F.3d 62 (D.C. Cir. 2004) ...................................................................................... 23

*Anastas v. American Savings Bank*,
    94 F.3d 1280 (9th Cir. 1996) ..................................................................................... 10

*Atlantis Info. Tech. v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) ...................................................................... 17

*Bates v. Northwestern Human Servs.*,
    466 F. Supp. 2d 69 (D.D.C. 2006) ............................................................................ 21

*Bell v. UFCW*,
    191 F. Supp. 2d 10 (D.D.C. 2002) ............................................................................ 16

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................................................. 1, 2, 11, 16

*Bennett v. Kiggins*,
    377 A.2d 57 (D.C. 1977) ................................................................................. 9, 10, 11

*Benz v. Washington Newspaper Publ'g Co.*,
    Civ. A. No. 05-1760, 2007 WL 1794104 (D.D.C. June 19, 2007) ........................... 3

*Brown v. Chaffee*,
    612 F.2d 497 (10th Cir.1979) .................................................................................... 12

*Burlington Ins. Co. v. Okie Dokie, Inc.*,
    329 F. Supp. 2d 45 (D.D.C. 2004) ............................................................................ 14

*Burlington Ins. Co. v. Okie Dokie, Inc.*,
    398 F. Supp. 2d 147 (D.D.C. 2005) .......................................................................... 14

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ............................................................................... 2, 8

*Cassidy v. Owen*,
    533 A.2d 253 (D.C. 1987) ......................................................................................... 19

*Chedick v. Nash*,
    151 F.3d 1077 (D.C. Cir. 1998) ....................................................................... 9, 10, 11

*Conte v. US Alliance Fed. Credit Union*,
    303 F. Supp. 2d 220 (D. Conn. 2004) ...................................................................... 17

*Day v. Avery*,
    548 F.2d 1018 (D.C. Cir. 1976) .................................................................................. 9

*Devoine Co. v. Int'l Co.*,
    136 A. 37 (Md. 1927) .......................................................................................... 21, 23

*Ferenc v. World Child, Inc.*,
    977 F. Supp. 56 (D.D.C. 1997 ................................................................................. 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Food Fair Stores v. Blumberg*,
200 A.2d 166 (Md. 1964) ........................................................................................ 21

*G&M Oil Co. v. Glenfed Financial Corp.*,
782 F. Supp. 1085 (D. Md. 1991) ........................................................................... 14

*Hercules & Co., Ltd. v. Shama Restaurant Corp.*,
613 A.2d 916 (D.C. 1992) ................................................................................*passim*

*High v. McLean Financial Corp.*,
659 F. Supp. 1561 (D.D.C. 1987) ........................................................................... 15

*Hite v. Leeds Weld Equity Partners*,
429 F. Supp. 2d 110 (D.D.C. 2006) ....................................................................... 16

*Householder Group LLLP v. Fuss*,
No. C 07-573 SI, 2007 WL 1650933 (N.D. Cal. 2007) ........................................ 19

*Howard v. Riggs Nat. Bank*,
432 A.2d 701 (D.C. 1981) ...................................................................................... 10

*In re Brown*,
319 B.R. 278, 284 (Bankr. D.D.C. 2004) .............................................................. 14

*In re Mid-Island Hosp., Inc.*,
276 F.3d 123 (2d Cir. 2002) ................................................................................... 15

*In re Monahan Ford Corp.*,
340 B.R. 1 (Bankr. E.D.N.Y. 2006) ....................................................................... 17

*In re Polaroid*,
362 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................... 16

*In re U.S. Office Products Co. Securities Litig.*,
251 F. Supp. 2d 77 ...........................................................................................*passim*

*In re WorldCom*,
263 F. Supp. 2d 745 (S.D.N.Y. 2003) ................................................................... 16

*Klayman v. Judicial Watch, Inc.*,
Civ. A. No. 06-670, 2007 U.S. Dist. LEXIS 24706 (D.D.C. Apr. 3, 2007) ....... 2, 5

*Management Assistance, Inc. v. Computer Dimensions, Inc.*,
546 F. Supp. 666 (N.D. Ga. 1982) ......................................................................... 13

*Media General, Inc. v. Tomlin*,
505 F. Supp.2d 51 (D.D.C. 2007) ............................................................................ 3

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs.*,
951 F.2d 1399 (3d Cir. 1991) ................................................................................... 4

*Nolan v. Nolan*,
568 A.2d 479 (D.C. 1990) ...................................................................................... 19

*One-O-One Enterprises v. Caruso*,
848 F.2d 1283 (D.C. Cir. 1988) .......................................................................*passim*

*Ozerol v. Howard University*,
545 A.2d 638 (D.C. 1988) ........................................................................................ 6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Pan Am Corp. v. Delta Air Lines*,
    175 B.R. 438 (S.D.N.Y. 1994)........................................................................ 15

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)........................................................................................... 8

*Persson v. Smart Inventions, Inc.*,
    125 Cal. App. 4th 1141 (Cal. Ct. App. 2005) ................................................. 16

*Postlewaite v. McGraw-Hill, Inc.*,
    411 F.3d 63  (2d Cir. 2005)................................................................................ 6

*Primax Recoveries v. Lee*,
    260 F. Supp. 2d 43 (D.D.C. 2003) .................................................................. 16

*Regency Comms. Inc. v. Cleartel Comms. Inc.*,
    160 F. Supp.2d 36 (D.D.C. 2001) ................................................................... 12

*Remeikis v. Boss & Phelps, Inc.*,
    419 A.2d 986 (1980) ....................................................................................... 14

*Shekoyan v. Sibley Int'l Corp.*,
    217 F. Supp. 2d 59 (D.D.C. 2002) .................................................................... 8

*Shoreham Hotel Ltd. Partnership v. Wilder*,
    866 F. Supp. 1 (D.D.C. 1994) ......................................................................... 24

*Silver Hill Station Ltd. v. HAS/Wesfor Bancgroup*,
    158 F. Supp. 2d 631 (D. Md. 2001) ................................................................ 15

*Thompson v. Islam*, No. Civ.A. 01-0585,
    No. Civ. A. 01-0585(PLF), 2005 WL 3262926 (D.D.C. July 29, 2005) ............. 12

*Urban Invest., Inc. v. Branham*,
    464 A.2d 93 (D.C. 1983) ..................................................................... 10, 11, 12, 17

*Wash. Metro Area Transit Auth. v. Quik Serve Foods, Inc.*,
    No. 04-838, 2006 U.S. Dist. LEXIS 24510 (D.D.C. 2006) .......................... 20, 21

*Washington Sheraton Corp. v. 2660 Woodley Road Joint Venture*,
    No. 05-00971, 2006 WL 2792682 (D.D.C. Sept. 26, 2006)............................ 12

*Whelan v. Abell*,
    48 F.3d 1247 (D.C. Cir. 1995) ............................................................... 3, 4, 5

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 8(e)(2).......................................................................................... 23

**MISCELLANEOUS**

2 E. Allan Farnsworth, CONTRACTS § 7.3........................................................... 6

RESTATEMENT (SECOND) OF CONTRACTS § 213 (1979) ............................................. 6

## INTRODUCTION

When parties agree that a written contract expresses their entire understanding, the law holds them to the terms of that agreement, and does not permit them to alter or supplement those terms through fraud claims or equitable causes of action. Similarly, where those parties are two sophisticated, well advised parties to an arm's-length commercial transaction, the law does not impose some additional duty (whether fiduciary or otherwise) on one party to the transaction in the absence of a "special relationship" between the parties. Those two basic principles preclude plaintiffs' non-contract causes of action. In their Opposition, Plaintiffs struggle to overcome those principles by shifting theories, adding new allegations, and citing a permissive pleading standard that has been expressly overruled. But in the end, Plaintiffs' effort to raise the reputational and financial stakes in this litigation must be rejected. Any claims Plaintiffs have lie in contract, and their remaining claims must be dismissed.

## ARGUMENT

**I.     Plaintiffs Misstate the Applicable Pleading Standard**

Plaintiffs begin by asking this Court to apply the "no set of facts" pleading standard that the Supreme Court has recently, and unequivocally, repudiated. Opp. at 13. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court stated:

> We could go on, but there is no need to pile up further citations to show that *Conley*'s "no set of facts" language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . .

*Id.* at 1969. The problem, the Court explained, is that under *Conley*'s "no set of facts," standard, "a wholly conclusory statement of claim would survive a motion to dismiss whenever the

pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968.

Plaintiffs' reliance on this improper pleading standard is apparent throughout their Opposition, as they repeatedly rely on conclusory allegations without plausible factual support. *See* Opp. at 22 (relying on conclusory assertion that Wachovia knew that representations were false); Opp. at 32 (relying on conclusory assertion that relationship is one of trust and confidence); Opp. at 18 (relying on conclusory assertion of reliance). When measured against the proper standard – which requires that a plaintiff plead enough facts "to state a claim to relief that is plausible on its face," and to "raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, 1974 – it is apparent that Plaintiffs' claims fail. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Id.* at 1969 (emphasis omitted) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)); *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 5 (D.D.C. 2007) (Lamberth, J.) (following *Twombly*).

## II.    Plaintiffs' Fraud and Negligent Misrepresentation Claims Should Be Dismissed

### A.    *The Integration Clauses Bar the Fraud and Misrepresentation Claims*

The general rule, articulated in this District as recently as nine months ago, is that "where an agreement provides that it supersedes all previous agreements and understandings, any prior representations are superseded, such that there are no representations on which a plaintiff could reasonably base a fraud claim." *Klayman v. Judicial Watch, Inc.*, Civ. A. No. 06-670, 2007 U.S. Dist. LEXIS 24706, at *26 (D.D.C. Apr. 3, 2007) (citing *One-O-One Enterprises v. Caruso*, 848 F.2d 1283, 1286-87 (D.C. Cir. 1988)). As a matter of law, both the D.C. Circuit and the District

of Columbia have determined that any representations not included in an integrated writing are by very definition of their omission **immaterial**, and that any reliance on such excluded representations is therefore ***unreasonable***. *See One-O-One*, 848 F.2d at 1287; *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 928 (D.C. 1992).[1]

Seeking to avoid the plain result dictated by this rule, AAJ offers several arguments, all unconvincing. First, AAJ asserts that it does not need to show that its reliance was reasonable. Opp. at 18. This is incorrect. D.C. law has long held that "in the context of commercial dealings at arm's length" a party alleging fraud "must establish not only that it actually relied on a false representation, but also that its reliance was objectively reasonable." *Hercules*, 613 A.2d at 933.[2] Because they rely only on a case that does ***not*** involve a commercial transaction, Plaintiffs misunderstand this clear requirement. Opp. at 18, relying on *Benz v. Washington Newspaper Publ'g Co.*, Civ. A. No. 05-1760, 2007 WL 1794104 (D.D.C. June 19, 2007) (not requiring reasonable reliance in noncommercial context).[3]

AAJ next argues that it is justified in relying on a false statement of the parties' intent if that statement is material. Opp. at 19. But, this misses the fundamental point. Courts have

---

[1] Both *Whelan* (discussed *infra*) and *One-O-One* contradict Plaintiffs' assertion (Opp. at 22) that the question of reliance must be reserved for the jury. Where reliance has been deemed unreasonable as a matter of law, dismissal is appropriate. *See Hercules*, 613 A.2d at 933-34.

[2] *See also*, *e.g.*, *One-O-One*, 848 F.2d at 1286 ("To state a claim of fraud . . . plaintiffs' allegations must indicate that their reliance on the allegedly fraudulent representations was reasonable."); *Media General, Inc. v. Tomlin*, 505 F. Supp.2d 51, 62-63 (D.D.C. 2007) ("A plaintiff is barred from recovering on . . . a claim of . . . common law fraud if its reliance on the alleged misrepresentations or omissions was not reasonable or justifiable."); *In re U.S. Office Products Co. Securities Litig.*, 251 F. Supp. 2d 77, 101 ("*USOP*") ("In the commercial context, not only must the plaintiffs plead reasonable reliance, but the plaintiffs must plead reliance that is objectively reasonable.").

[3] AAJ also argues that its reliance was justified by the existence of a fiduciary relationship with Wachovia. Opp. at 19. As discussed below, the facts as alleged in plaintiffs' own complaint do not support, and even preclude, the inference that Wachovia owed AAJ a fiduciary duty.

3

repeatedly found that where a contract is completely integrated, statements not included in that agreement are presumptively ***immaterial***, a point that AAJ does not dispute.  The very case AAJ relies upon, *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs.*, 951 F.2d 1399 (3d Cir. 1991), reinforces the point.  There, the court found that the plaintiffs' alleged reliance on the borrower's stated intent not to prepay a loan was not reasonable:

> After consulting with counsel at all stages of the transaction and closing on detailed written documents, it is not reasonable for Mellon [Bank] to rely on oral promises that directly contradict the written agreements between the parties. . . . Under the circumstances present here, we are unable to say Mellon could justifiably rely on a gentlemen's agreement not to do what the formal agreement gave one party, but not the other, the right to do.

*Id.* at 1412.

AAJ argues that the general rule of *Hercules* and *One-O-One* was rejected by *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995).  Opp. at 19.[4]  Not so.  Even if the D.C. Circuit in *Whelan* could have overruled *Hercules* with respect to a question of District of Columbia law (which it could not), it did not do so, and it expressly re-affirmed its own prior decision in *One-O-One*. The language in *Whelan* upon which AAJ relies is *dicta*, and is irrelevant to the claims at issue in this case.  In *Whelan*, the court overruled a grant of summary judgment against the plaintiffs' abuse of legal process claim, and then merely advanced the possibility in *dicta* that an integration clause may not bar every conceivable fraudulent inducement claim.  *Whelan*, 48 F.3d at 1258. The court provided no guidance to identify those fraud claims that it imagined would ***not*** be

---

[4]  In *Hercules*, the District of Columbia Court of Appeals considered a fraud claim based on the alleged nondisclosure of financial information that could have established that the defendants would not be able to perform their obligations under the contract as promised.  613 A.2d at 918. The court dismissed the claim in light of the contract's integration clause.  As the court explained, the parol evidence rule would be "swallow[ed] up . . . if representations made during negotiations, but not included in the contract as executed, could be characterized as fraud and then used to undo an otherwise complete agreement."  613 A.2d at 929.  AAJ does not even attempt to address *Hercules* in any meaningful fashion.

barred by an integration clause, but **did** acknowledge that the type of fraud claims asserted in *One-O-One* would be barred. Those claims included "alleged oral promises as to future behavior, not included in the final, written contract" and "alleged concealment of some [matter] . . . at worst in violation of the . . . alleged promises." *Id.* AAJ's claims fall squarely into those two categories of claims.[5]

Whelan thus left *One-O-One*'s holding intact, and did not even address *Hercules*. Accordingly, *One-O-One* has been cited in this District on two instances since the *Whelan* decision for precisely the rule relied upon here. *See Klayman*, 2007 U.S. Dist. LEXIS 24706, at *26; *USOP*, 251 F. Supp. 2d at 101. In fact, the *USOP* court even cited *Whelan* as support for the very proposition that "[u]nless the plaintiffs allege that the representation omitted from the contract was omitted by fraud, mistake or accident, an integration clause bars representations not contained in the contract even when the plaintiffs allege fraudulent inducement to enter the contract." *Id.* at 102 (citing *Whelan*).

In an attempt to distinguish its allegations from the facts of *One-O-One*, AAJ asserts that it does not seek to alter the Loan Commitment Agreement or add terms on which the contract is silent, but that its claims relate instead to Defendants' then present intention to perform their obligations. Opp. at 20-21. Factually, this is wrong. All the alleged statements upon which AAJ relies are statements concerning promises of Defendants' future performance that are not

---

[5] AAJ's claims are either predicated on alleged representations as to future behavior not included in the final written contract (*e.g.* "that Wachovia could be trusted to fund and sell the Loan as contemplated, and that Wachovia would stand by AAJ and see to it that AAJ would proceed to closing," Opp. at 15 (citing Compl. ¶ 150)), or are predicated on the alleged concealment of information at worst in violation of the alleged promises (*e.g.*, Wachovia's alleged omissions concerning the state of the market).

incorporated into the Agreement.[6]  Legally, Plaintiffs' attempt to recharacterize their claims as ones related to defendants' present intent is simply irrelevant.  Indeed, in *One-O-One* the plaintiffs' claims also related to defendants' stated present intent.  *One-O-One*, 848 F. 2d at 1284 (defendants stated that they "***intended*** to maintain and expand the Rustler Steak House business" and that "they did not ***intend*** to 'sell or dispose of their ownership interest . . . in the near or foreseeable future.") (emphasis added).  Courts have long recognized that the language of a contract is the best evidence of what the parties intended.[7]  If an integration clause is to have any meaning, it is to supersede and replace any statement related to the parties' intent other than that which is written in the agreement.

Finally, AAJ argues that the language of the integration clause in the Loan Commitment Agreement does not preclude reliance on prior representations.  This is incorrect.  Under D.C. law, "a recital that the writing 'contains the entire agreement of the parties' has traditionally been given effect 'as showing an intention that the agreement be completely integrated.'"  *Hercules*, 613 A.2d at 928 n.17 (quoting 2 E. Allan Farnsworth, CONTRACTS § 7.3 at 205-06).  Indeed, despite their quibbles about the language of the integration clause, AAJ does not dispute that the Loan Commitment Agreement and Rate Lock Agreement are fully integrated writings.  Where, as here, a contract is integrated, the parol evidence rule dictates that the contract "may not be

---

[6]  For example, Plaintiffs allege that Wachovia represented that it "would not leave AAJ 'alone at the altar'" (Compl. ¶ 61); that AAJ "should feel completely comfortable placing its trust in Wachovia to stand by its commitment and fund the loan under the terms in the Term Sheet" (*Id.* ¶ 62); and that the MAC clause would be invoked "only in the case of an unforeseeable '9/11-type meltdown'" (*Id.* ¶ 60).

[7]  *See*, *e.g.*, *Ozerol v. Howard University*, 545 A.2d 638, 641 (D.C. 1988) ("[W]hen parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings between the parties. Thus, the writing itself is viewed as the expression of the parties' intent." (citing RESTATEMENT (SECOND) OF CONTRACTS § 213 (1979))); *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 69 (2d Cir. 2005) ("The best evidence of what parties to a written agreement intend is what they say in their writing.").

supplemented with prior representations not ultimately included therein." *Id.* at 928. This rule applies whether the integration clause is "viewed as wimpy . . . or as macho." *Id.* at 928 n.17 (internal quotation marks and citations omitted). Thus, courts in the District of Columbia have consistently dismissed fraud claims based on prior representations, without requiring that the integration clause explicitly bar "representations." *See Hercules*, 613 A.2d at 927 (contract documents "constitute the entire agreement"); *One-O-One*, 848 F.2d at 1287 (the agreement "supersede[s] any and all previous understandings and agreements"); *USOP*, 251 F. Supp. 2d at 102 ("[A]ny and all previous agreements and understandings . . . are superseded by this agreement.").

B.    *Plaintiffs Have Failed To Allege a Factual Basis for the Fraud and Misrepresentation Claims*

Defendants' opening brief identified a fatal flaw in Plaintiffs' fraud and misrepresentation claims: the failure to allege any false statement of *fact* on which to base the claims. Defendants addressed all five of the statements identified in AAJ's fraud count, and with respect to each demonstrated why the alleged statement was not sufficient to support AAJ's fraud claim. Notably, AAJ does not address any of those specific arguments, characterizing the statements as "snippets" taken out of context. Opp. at 17. In fact, implicitly conceding the inadequacy of their existing factual allegations, Plaintiffs attempt to supplement their pleadings with new alleged factual misstatements. Opp. at 8 & n.4.[8] AAJ's failure to identify a single false statement of fact is fatal to its claim.

---

[8] Like AAJ's other alleged "misrepresentations," Biderman's alleged statement that Wachovia would keep the loan on its books is a statement of future behavior, and the integration clause bars any claim based on such statement. Further, the allegation is wholly unaccompanied by any alleged facts that would give rise to an inference that it was false at the time made. Thus, the allegation is insufficient to state a claim. Finally, the statement was concededly not asserted in the Complaint, despite the fact that plaintiffs have already amended the Complaint once.
(cont'd)

Plaintiffs now attempt to reframe their fraud arguments, making the conclusory allegation that Wachovia "misrepresented [its] present intention to follow through with the Loan" and "concealed [its] existing knowledge of the extraordinary risk that future market conditions would cause [it] to back out of the Loan." Opp. at 15-16.[9]  But AAJ's fraud claim cannot exist separate and apart from the alleged statements themselves.  Fraud must be pled with specificity to permit careful judicial review of the claims, which is not possible based on generalized statements that "[d]efendants misrepresented their present intention to follow through with the Loan" (Op. at 15).  The alleged statements identified by AAJ are not false, and most were expressly qualified by reference to the contract itself.  For example, in its Opposition, AAJ argues that Defendants stated that Wachovia "could be trusted to fund and sell the Loan as contemplated [in the Term Sheet]."  Op. at 15 (citing Compl. ¶ 150).  Yet the Term Sheet included the material adverse change clause, which was ultimately invoked by Wachovia.  Thus, this statement cannot be false.  AAJ also argues that Defendants stated that "Wachovia would stand by AAJ and see to it that AAJ would proceed to closing." (Op. at 15).  Yet, AAJ concedes that, as provided in the Loan Commitment Agreement, Wachovia did offer alternate financing arrangements that would have

---

Plaintiffs may not use their opposition brief to amend their complaint for a second time.  *See Car Carriers* 745 F.2d at 1107 (stating that "consideration of a motion to dismiss is limited to the pleadings" and "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").  This conclusion is not contradicted by the cases cited by Plaintiffs (Opp. at 8 n.4), which applied not to wholesale additions of factual allegations, but to "clarifications" of the complaint (*Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000)) or to "time, place and nature" details added by a *pro se* plaintiff solely to satisfy Rule 9(b) (*Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73-74 (D.D.C. 2002)).

[9] Indeed, nowhere in AAJ's fraud count (Count IV) is there any reference to Wachovia misrepresenting its present intent to comply with the terms of the parties' agreement.  Rather, Plaintiffs allege that the five statements addressed in Defendants' opening brief were false and misleading.  Compl. ¶ 151.  Given Plaintiffs' obligation to allege fraud with specificity, one would have expected them to at least identify the supposed thrust of their claim.

permitted AAJ to close on the loan. Compl. ¶ 80. AAJ has simply failed to plead (with or without specificity) any false statement of fact.

Plaintiffs' reliance on *Chedick v. Nash*, 151 F.3d 1077 (D.C. Cir. 1998) cannot salvage the claim. *Chedick* represents a "very narrow" exception to the "general rule" that "an erroneous representation of future events is not tortious." *Id.* at 1082. That exception is narrowly tailored to circumstances "[w]hen a person ***positively states*** that something is to be done or is to occur, when he ***knows the contrary*** to be true." *Chedick*, 151 F.3d at 1081 (emphasis added) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 61-62 (D.C. 1977)). Plaintiffs are unable to satisfy either of those elements. First, as noted above, AAJ's complaint does not identify any "positive statement" of any conduct that did not in fact occur.

Second, AAJ's complaint does not allege that Wachovia made a promise (that it would unconditionally fund the loan) when it knew the contrary to be true (that it would not fund the loan). Rather, AAJ attempts to turn a nuanced distinction of alleged intent into a claim for fraud. At best, AAJ alleges that Wachovia made a conditional promise to fund the loan (conditioned on the absence of a material adverse change in market conditions) at a time when it intended to fund the loan on this "trophy property," but "knew it had ***only a small chance*** of actually closing [the loan]. Opp. at 23. This alleged "secret" intent is not ***contrary*** to Wachovia's allegedly expressed intent of funding the loan "as contemplated" by the parties' agreements.

Every case in the District of Columbia that has discussed this theory recognizes that a plaintiff must allege that the defendant secretly harbored an intent ***contrary*** to that which he stated, or knew of facts that would ***prevent*** the occurrence of the event predicted.[10] It was on that

---

[10] *See*, *e.g.*, *Bennett*, 377 A.2d at 61; *Chedick*, 151 F.3d at 1081 (recognizing claim where plaintiff alleged that defendant "intended to ***prevent***" performance); *id.* at 1082 (quoting jury instructions requiring a finding that defendant entered contract "with the intent ***not*** to perform");
(cont'd)

basis that *Chedick* upheld a homeowner's claim that a predatory mortgage lender fraudulently induced her to sign a mortgage. The homeowner alleged that the lender "intended to **prevent** her repaying her mortgage" and "[sought] to frustrate her performance" so that it could foreclose on her property. 151 F.3d at 1081. The homeowner presented substantial factual evidence to support an inference that the lender intended to frustrate performance of the contract.[11] *Id.*

Recognizing a fraud claim based on the bare allegation that a defendant knew of **possibilities** that his intent could be thwarted would expand the "very narrow" exception of *Chedick* and *Bennett* beyond any reasonable bounds. *Cf. Anastas v. American Savings Bank*, 94 F.3d 1280, 1287 (9th Cir. 1996) (claim for fraud not supported where it was merely unlikely that credit card holder would be unable to win back money gambling to pay credit card debt). Without insistence on a "contrary" intent (or knowledge of information that would "prevent" performance), there would be no principled line to be drawn as to what degree of uncertainty might support a claim of fraud.[12] To allow a claim based on some modicum of uncertainty is particularly inappropriate where, as here (and unlike in *Chedick*), Plaintiff was a sophisticated

---

*Day v. Avery*, 548 F.2d 1018, 1027 (D.C. Cir. 1976) ("[O]ne who asserts that a future event will come to pass impliedly warrants that he knows of no fact that will **prevent** its occurrence."); *id.* at 1127 n.50 (citing authorities that "hold[] promisors liable in misrepresentation for promises made with **an intention never to carry them out**"); *Urban Invest., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983) (fraudulent misrepresentation requires evidence that defendants "positively stated that something was to be done, **knowing and intending the contrary**"); *Howard v. Riggs Nat. Bank*, 432 A.2d 701, 706 (D.C. 1981) ("When a person positively states that something is to be done or is to occur, when he **knows the contrary to be true**, the statement will support an action in fraud.") (all emphases added).

[11] The homeowner demonstrated that the lender repeatedly miscalculated her monthly payments, forced her into foreclosure by capitalizing costs that should have been addressed as separate fees, and significantly overestimated the amount required to pay off the mortgage (thereby scuttling a sale that could have precluded foreclosure). She also presented evidence to establish that these actions were consistent with a pattern and practice that had resulted in other foreclosures. *See Chedick*, 151 F.3d at 1081.

[12] For example, a fraud claim might be brought against a contractor who promises to "fix your drive tomorrow unless it rains," based on the allegation that news reports had forecasted rain.

party to an arms-length commercial transaction, and the alleged uncertainty relates to information about financial market conditions that was accessible to AAJ (and to its commercial real estate broker, the Staubach Company).   Accordingly, Plaintiffs' fraud claim should be rejected.

C.      *Plaintiffs Have Not Alleged Any Facts that Would Support an Inference of Knowledge or Intent*

Even if Plaintiffs' allegations relating to present intent could be actionable under *Chedick*, they nonetheless fail.  Plaintiffs have failed to plead ***facts*** that would support the conclusory allegation that the supposed statements of intent were false when stated.

Plaintiffs argue that they need not provide facts to support an inference that Wachovia harbored an intent contrary to its alleged statements that it would fund the loan.  This is not correct.  *See Twombly*, 127 S. Ct. at 1965 (a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  District of Columbia law clearly requires that all elements of a fraud claim must be plausibly supported by factual allegations:

> Fraud is never assumed and must be particularly pleaded. . . .  One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud.  Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions of fraud are insufficient.

*Bennett*, 377 A.2d 59-60; *see also Hercules*, 613 A.2d at 923; *USOP*, 251 F. Supp. 2d at 100 ("[F]raud claims must plead facts capable of establishing each of the requisite elements of fraud.").

In particular, a fraud claim based on an intention not to perform must be supported by some factual basis above and beyond the alleged eventual breach of the promise.  Evidence that a contract was breached "does not support a conclusion that the promise was fraudulent."  *Urban*

*Invest., Inc.*, 464 A.2d at 99 ("[t]here is no evidence that [defendants] positively stated that something was to be done, ***knowing and intending the contrary***") (emphasis added); *see also Chedick*, 151 F.3d at 1082 (quoting jury instruction that "[a] breach of the term of the contract which occurred later cannot alone serve as proof of [fraudulent] intention"); *cf. Thompson v. Islam*, No. Civ. A. 01-0585(PLF), 2005 WL 3262926, at *7 (D.D.C. July 29, 2005) (District of Columbia law "bar[s] a fraud claim that stems merely from the failure to perform a contract.").[13] Plaintiffs have failed to allege any ***facts*** that could support an inference that Wachovia's or Biderman's alleged statements of intent to fund the loan were false at the time they were made. Therefore, the claims should be dismissed.

D.    *Defendants' Arguments To Dismiss the Fraud Claims Have Fully Addressed the Rate Lock Component of Those Claims*

AAJ argues that Wachovia's motion to dismiss the fraud claims somehow addressed only the Loan Commitment Agreement, and did not encompass AAJ's "fraud and misrepresentation claims relating to the Rate Lock." Opp. at 14. This is baseless. Wachovia's arguments for dismissal were directed at, and apply with equal force to, both components of the fraud claim, which were based on the same set of allegations. To wit, AAJ has not identified any false representation of fact upon which to base ***any part*** of these claims, and even those representations AAJ does put forth are barred from consideration by the integration clauses in ***both*** contracts. *See supra* Part II.B; Mot. at 13-17.

---

[13] S*ee also Regency Comms. Inc. v. Cleartel Comms. Inc.*, 160 F. Supp.2d 36, 43 (D.D.C. 2001) (Lamberth, J.) (fraud claims "fail[] as a matter of law" if they are "duplicative of the breach of contract claim"); *Washington Sheraton Corp. v. 2660 Woodley Road Joint Venture*, No. 05-00971, 2006 WL 2792682, *4 (D.D.C. Sept. 26, 2006) (a plaintiff "cannot turn an action for breach of contract into an action for fraud by merely alleging reliance on representations that the contract would be performed and detriment from its breach") (quoting *Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir.1979)).

AAJ attempts to evade the contractual integration clauses by arguing that it relied on oral representations made after the Rate Lock Agreement was executed. This is futile for several reasons. First, the Term Sheet and the Rate Lock Agreement preclude any subsequent oral amendment,[14] provide that no oral agreement reached during negotiations shall be binding on the parties,[15] and provide that Wachovia "is under no obligation to issue a Commitment."[16] In light of this clear contractual language, reliance on any representations of Wachovia's intention to fund the loan is unreasonable as a matter of law.[17] Second, AAJ's failure to insist that the alleged oral representations be included in the subsequent Loan Commitment Agreement establishes conclusively that AAJ did not consider those representations material. Third, AAJ's insistence that it "required" the execution of the written Loan Commitment Agreement prior to the expiration of the due diligence period (Compl. ¶ 51) demonstrates conclusively that AAJ itself did not believe it was reasonable to rely on any oral assurances with regard to the eventual funding of the loan. Finally, AAJ's assertion that the Loan Commitment Agreement was not issued by May 30, 2007 is contradicted by the Complaint's allegations and the Loan Commitment Agreement itself. AAJ concedes that Wachovia sent the Loan Commitment Agreement "on or about May 18, 2007" (*see* Mot. at 28), and AAJ waived any argument that the

---

[14] The Rate Lock Agreement specifies that "no amendment, modification or waiver under this Agreement shall be effective unless in writing signed by the parties hereto." Compl. Ex. B § 9.

[15] Term Sheet, Compl. Ex. A at 7 ("No agreement (oral or otherwise) that may be reached during negotiations shall be binding upon the parties until a final commitment letter has been issued by Lender and accepted by Borrower.").

[16] Rate Lock Agreement, Compl. Ex. B § 1(c).

[17] *See Management Assistance, Inc. v. Computer Dimensions, Inc.*, 546 F. Supp. 666, 672 (N.D. Ga. 1982) (quoted as "especially persuasive" in *Hercules*, 613 A.2d at 934) ("[P]laintiffs read the written agreement and understood that it contained terms materially different from the purported oral assurances. In such a situation, any continued reliance on the purported oral assurances was clearly unreasonable.").

Loan Commitment Agreement did not "issue" by May 30, 2007 when it executed the Agreement, which is dated May 25, 2007 and provides that it is "null and void" if not executed "within five (5) days from the date hereof."  Compl. Ex. C § 1.14.

>    E.    *Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed for the Additional Reason that Plaintiffs Cannot Establish the Element of Duty*

AAJ's negligent misrepresentation claim not only fails for the reasons stated above, but also because AAJ failed to identify any duty supporting such a claim.  In a vain attempt to create such a duty, plaintiffs' mistakenly rely on two inapposite cases.  First, Plaintiffs assert that *Burlington Ins. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45 (D.D.C. 2004), supports a duty of care even in an arm's-length loan transaction.  This is mistaken.  In *Okie Dokie*, the defendant insurance broker argued, in part, that he should not be held liable because there is generally no duty of care owed by parties to an arm's-length commercial transaction.  The court did not "reject" this premise, but simply crafted an exception for those instances where the defendant is a "commercial supplier of information."[18]  This is consistent with Wachovia's argument that "the law imposes a duty of care in conveying information only on persons in a special relationship such as agent-principal or client-professional, and on ***those in the business of supplying information***, such as accountants and notaries." Mot. at 15 n.7 (emphasis added).  An insurance broker is a "commercial supplier of information."[19]  Wachovia, however, is not.  *See*, *e.g.*, *G&M Oil Co. v. Glenfed Financial Corp.*, 782 F. Supp. 1085, 1089 (D. Md. 1991) (finding no duty of

---

[18]  The court characterized its own holding as follows: "under D.C. law, commercial suppliers of information, such as [an insurance broker], owe a duty of care to those intended to receive the information." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 154 (D.D.C. 2005).

[19]  The limited category of persons – primarily commercial suppliers of information – that have been held to a duty of care in supplying information include adoption agencies, *see Ferenc v. World Child, Inc.*, 977 F. Supp. 56, 60 (D.D.C. 1997), HUD fee inspectors, *see In re Brown*, 319 B.R. 278, 284 (Bankr. D.D.C. 2004), and termite inspectors, *see Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 990 (D.C. 1980).

care owed by a bank to a borrower in a negligent misrepresentation case, and stating that "[i]n order for a duty of care to exist between parties involved in an arm's length commercial transaction involving pecuniary loss only, the parties must have a special relationship or intimate nexus").

The other case on which AAJ relies, *High v. McLean Financial Corp.*, is inapposite because it involved negligence in processing a loan application, not negligent misrepresentation. 659 F. Supp. 1561, 1570 (D.D.C. 1987). Moreover, the Maryland case that *High* relied on for guidance (after recognizing the absence of D.C. precedent on the point) has been construed by subsequent courts as inapplicable to commercial loan transactions. *See Silver Hill Station Ltd. v. HAS/Wesfor Bancgroup*, 158 F. Supp. 2d 631, 639 (D. Md. 2001) (discussing cases).

## III. The Complaint Fails to State a Claim for Breach of Fiduciary Duty

AAJ's fiduciary duty claims should be dismissed because the Complaint's allegations do not plausibly support, and in fact preclude, the inference that Wachovia owed a fiduciary duty to AAJ. Imposition of a fiduciary duty in the context of an ordinary business transaction such as this is an extraordinary step that is reserved for situations where a contracting party is so vulnerable entering into the relationship that it cannot protect its own interests through negotiation.[20] Having been represented by experienced advisors and counsel, having exerted sufficient bargaining power to "require" or "insist" upon the very contracts it is attempting to circumvent (*e.g.*, Compl. ¶¶ 41, 51), and having expressly represented that it was not relying on

---

[20]  *See* Mot. at 19-20; *see also In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."); *Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 512 (S.D.N.Y. 1994) ("A fiduciary relationship generally cannot be implied between parties to a commercial transaction when each party is represented by counsel and other professional advisors who have been retained to protect their best interests.").

15

Wachovia as a fiduciary, AAJ now seeks to claim those protections that the law reserves for the most vulnerable – those affected by "advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1162 (Cal. Ct. App. 2005) (cited in Mot. at 20 n.10).

A.    *Plaintiffs Must Do More than Just Assert the Existence of a Fiduciary Duty*

Plaintiffs claim that "AAJ is only required to assert, not prove, the existence of a fiduciary relationship." Opp. at 30. They again have misunderstood the nature of their pleading burden. They of course need not "prove" in their Complaint that a fiduciary duty exists, but they still must allege a plausible ***basis*** for a fiduciary duty. *See Twombly*, 127 S. Ct. at 1974, 1965. Where there is a legally prescribed fiduciary duty (as under ERISA, or between lawyer and client), it may suffice for a complaint to simply allege that the relevant relationship exists and that therefore a fiduciary duty is owed. This is what happened in the cases cited by Plaintiffs at pages 30-31 of their Opposition, in each of which the complaint alleged the relevant party's specific plan administration responsibilities that gave rise to a fiduciary duty under ERISA.[21]

Where, however, Plaintiffs allege that a fiduciary duty arises not from the very nature of the parties' relationship, but instead from "special circumstances" of "trust and confidence" (Opp. at 30, 32), they must allege a plausible factual basis for the inference that "special circumstances" exist. *See* Mot. at 19-20. It is not enough to simply recite, as Plaintiffs do, that Wachovia possessed "superior knowledge," and that AAJ placed its "trust and confidence" in

---

[21] *See Hite v. Leeds Weld Equity Partners*, 429 F. Supp. 2d 110, 113-14 (D.D.C. 2006) (cited in Opp. at 30) (complaint alleged facts about party's plan management role such that party would fall within ERISA definition of fiduciary); *Bell v. UFCW*, 191 F. Supp. 2d 10, 16 (D.D.C. 2002) (cited in Opp. at 31) (same); *In re Polaroid*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005) (cited in Opp. at 31) (same); *In re WorldCom*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) (cited in Opp. at 31) (same); *Primax Recoveries v. Lee*, 260 F. Supp. 2d 43, 47 (D.D.C. 2003) (cited in Opp. at 31) (same).

Wachovia. *Some* degree of superior knowledge, trust, and confidence is present in every business transaction. *See*, *e.g.*, *Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007) (allegation of "superior knowledge" and "trust and confidence" found insufficient; court found "no basis for inferring that the trust and confidence [Plaintiff] reposed in [Defendant] was anything more than the type parties normally seek before entering an arms-length transaction"). What is missing from the Complaint is any allegation (*e.g.*, of AAJ's preexisting vulnerability, or of Wachovia's dominance or control of AAJ) that could plausibly raise AAJ's need to place "trust and confidence" in Wachovia to the level deserving of the protection of a fiduciary duty.[22]

Perhaps most tellingly, Plaintiffs fail even to address the holding of *Urban Investments*, cited by Defendants at pages 20-21 of their Motion. *Urban Investments* involved a vulnerable, unsophisticated, and uncounseled plaintiff – an elderly widow with only a high school education, no advisor, no business experience, and "little, if any, comprehension of the provisions of the various documents she signed." *Urban Invest.*, 464 A.2d at 95. *Still*, the D.C. Court of Appeals declined to find a fiduciary relationship in the context of an arms-length transaction. *Id.* at 96. Given that the *Urban Investments* case does not present facts that support a finding of "special circumstances," Plaintiffs' allegations here, which fall far short of those facts, cannot plausibly support the inference that the arms-length commercial transaction between AAJ and Wachovia gives rise to a fiduciary duty.

---

[22] The two cases on which AAJ relies for its contention that it has stated sufficient facts, neither of which addresses D.C. law, do not support Plaintiffs. In each case, the complaints alleged additional facts – beyond those alleged here – upon which to base their fiduciary duty claim. *See In re Monahan Ford Corp.*, 340 B.R. 1, 41 (Bankr. E.D.N.Y. 2006) (cited in Opp. at 32) (complaint alleged that defendant had "*dominated*" and **exerted control** over the plaintiff); *Conte v. US Alliance Fed. Credit Union*, 303 F. Supp. 2d 220, 227 (D. Conn. 2004) (also cited in Opp. at 32) (noting that fiduciary duty exists only where "a bank's conduct exceeds the usual creditor-debtor relationship," court found that complaint alleged existence of long-term broker-principal relationship (an inherently fiduciary relationship under New York law)).

**B.**      *AAJ Has Expressly Disclaimed the Existence of a Fiduciary Relationship*

The fact that AAJ expressly disclaimed the existence of any fiduciary (or similar) duty in Section 6(d) of the Rate Lock Agreement only adds to the utter implausibility of Plaintiffs' claim that Wachovia owed AAJ a fiduciary duty. Plaintiffs effectively concede in their Opposition that Defendants owed them no fiduciary duty with respect to the Rate Lock Agreement. Opp. at 32-33. They assert, however, that the disclaimer of fiduciary duty, even though incorporated by Section 1.11(c) of the Loan Commitment Agreement, does not apply to that agreement. Plaintiffs' argument on this point makes no sense, and should be rejected.

First, Plaintiffs argue that the disclaimer of any fiduciary duty somehow applied to the rate lock "Transaction" but not to the loan transaction as a whole. But this requires the utterly implausible inference that there were two distinct relationships between Wachovia and AAJ in connection with this single Loan – one of which was fiduciary in nature and one of which was not. Nothing in the Complaint supports such a bifurcation of the parties' relationship, and the language of the fiduciary duty disclaimer ("Wachovia has been ***and will be*** acting on an arm's length basis with Borrowers") renders unreasonable any expectation on AAJ's part that Wachovia would be acting in a fiduciary capacity with respect to the Loan Commitment Agreement.[23] Second, Plaintiffs suggest that there was a fiduciary duty inherent in the Loan Commitment Agreement that could not have been "waived" by the Rate Lock Agreement disclaimer. However, as discussed above, there is no fiduciary duty inherent in a loan agreement, and even if there were, no allegations support the notion that AAJ did not "knowingly and voluntarily" execute the Loan Commitment Agreement, which incorporated the

---

[23] Indeed, as noted in Defendants' Motion (at p. 21 n.11), even if a fiduciary duty existed, and even disregarding AAJ's disclaimer of any fiduciary duty, Plaintiffs have alleged no material misstatements or omissions by Wachovia upon which it would have been reasonable for Plaintiffs to rely.

disclaimer of fiduciary duty. Third, Plaintiffs suggest that the absence of a separate fiduciary duty disclaimer in the Loan Commitment Agreement shows that the parties intended to create a fiduciary duty. But even assuming that the incorporation of the Rate Lock Agreement's disclaimer into the Loan Commitment Agreement was somehow not effective, Wachovia is not *required* to protect itself against imposition of a fiduciary duty through a contractual disclaimer. Rather, Plaintiffs bear the burden of specifying the imposition of such an extraordinary duty, and if they had intended this aspect of the relationship to be fiduciary in nature, they should have "insisted" that this be specified in the Loan Commitment Agreement. *See*, *e.g.*, *Householder Group LLLP v. Fuss*, 2007 WL 1650933, at *4 (N.D. Cal. 2007) (dismissing fiduciary duty claim and stating, "[i]f [plaintiff] had intended to create a fiduciary relationship, it could have negotiated for specific language in the Agreement to that effect").

## IV.     Plaintiffs Have Failed To State a Claim for Equitable Estoppel

Plaintiffs are attempting to advance a freestanding claim of equitable estoppel that does not exist. AAJ's only purported evidence of this freestanding claim, *Cassidy v. Owen*, is not on point. In *Cassidy*, the plaintiff made a *claim* for mortgage fraud, and the court allowed her to assert the *theory* of equitable estoppel to bar certain defenses to that claim. *See* 533 A.2d 253, 255 (D.C. 1987) ("[Plaintiff's] *claim* of wrongful foreclosure is based upon an equitable estoppel by representation *theory*." (emphasis added)). AAJ has identified no case in the District of Columbia (or elsewhere) that has allowed equitable estoppel to proceed as a freestanding claim. Even assuming its existence, however, Plaintiffs' claim here fails. Like fraud, equitable estoppel requires a plaintiff to demonstrate *reasonable reliance* on a *false representation* of a *material fact*. *See Nolan v. Nolan*, 568 A.2d 479, 484 (D.C. 1990). However, Plaintiffs have not alleged a single false statement of fact to support their claims. *See supra* Part II.B. And each of the

representations Plaintiffs have alleged is barred by the integration clauses in the parties' agreements.[24]   *See supra* Part II.A.   Plaintiffs further argue that, even assuming equitable estoppel is not a claim, they can nevertheless assert the doctrine to bar Wachovia from invoking the MAC clause.  But because Plaintiffs cannot satisfy the elements of equitable estoppel, they cannot rely on this theory for any purpose.

## V.     Plaintiffs' Good Faith and Fair Dealing Claim Should Be Dismissed

Plaintiffs' claim for Breach of the Duty of Good Faith and Fair Dealing simply restates its breach of contract (and fraud) claims.  Such claims should be dismissed to avoid giving plaintiffs "two bites at the same apple."  *See* Mot. at 23.  Plaintiffs concede that the implied duty may not be used to "override the express terms of the contract,"  but then argue that their good faith claim exists separate from the breach of contract claim.  Opp. at 34-37.  They cannot have it both ways.  Either the "material adverse change" clause permitted Wachovia to terminate under the circumstances of this case, or it did not.  If it did *not* permit termination, then AAJ has recourse through a breach of contract claim.  If it *did* permit termination, then Wachovia's conduct cannot be said to be contrary to "the spirit of the contract" or a "willfully rendered imperfect performance."[25]   Seeking an alternative result through its good faith claim would

---

[24] As Plaintiffs concede, courts in this District have followed this rule in the context of promissory estoppel, the most closely related example which the courts have considered.  *See* Opp. at 40 n.28.  The logic of the rule applies with equal force in this context, and that rule should be applied here.  *See One-O-One Enterprises*, 848 F.2d at 1287 ("Were we to permit plaintiffs' use of defendants' prior representations . . . to defeat the clear words and purpose of the [Agreement's] integration clause, contracts would not be worth the paper on which they are written." (internal quotation marks omitted)).

[25] *See Wash. Metro Area Transit Auth. v. Quik Serve Foods, Inc.*, No. 04-838, 2006 U.S. Dist. LEXIS 24510, at *5 (D.D.C. 2006) (Lamberth, J.) (breach of duty of good faith requires that defendant "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party").  Plaintiffs have also failed to allege any facts that provide a plausible basis for the inference that Wachovia was acting "willfully" in bad faith (*cf.* Part II.C, *supra*).

impermissibly "override the terms of the contract." *Wash. Metro Area Transit Auth.* 2006 U.S. Dist. LEXIS 24510, at *5.[26]

## VI.    Plaintiffs' Equitable Accounting Claim Should Be Dismissed

Plaintiffs identify no legal or equitable duty to provide them an accounting. They disclaim the need to rely on a viable tort or fiduciary duty claim to obtain accounting, Opp. at 29, and instead rely on an alleged contractual duty for Wachovia to "provide [AAJ] with a statement setting forth its determination of Breakage Costs." Opp. at 29.[27] But Plaintiffs never alleged a breach of that provision of the contract. *See* Compl. Count II. Nor could they. The agreement does not require an "accounting," but merely that Wachovia "provide Borrowers with a statement setting forth its determination of Breakage Costs," which Wachovia did. Compl. Ex. B § 3. Nor does the contract permit Plaintiffs to second guess the methodology used to calculate the Breakage Costs, making Wachovia's determination of those costs "conclusive and binding." *Id.* Plaintiffs' accounting claim is yet another attempt to alter the express terms of the contract through claims that are not supported in the law.

## VII.    Plaintiffs' Rate Lock Agreement Breach of Contract Claim Should Be Dismissed

Plaintiffs argue that Wachovia's charge of $10,005 for Breakage Costs breaches the Rate Lock Agreement. They make this argument because in the statement that Wachovia provided to

---

[26]  Plaintiffs cite to two Maryland cases in arguing that they should have a good faith claim against Wachovia if it exercised its discretionary termination right under the Loan Commitment Agreement on a pretextual basis. Opp. at 36. These cases simply confirm that this claim, if it arises at all, is part of AAJ's contract claim. *See Devoine Co.*, 136 A. at 38 (finding in breach of contract action that party's termination of contract was ineffectual when made in bad faith – i.e., when condition required for discretionary termination was clearly not present); *Food Fair Stores v. Blumberg*, 200 A.2d 166, 174 (Md. 1964) (treating bad faith claim as aspect of a contract claim).

[27]  In any event, a breach of contract cannot give rise to a duty to account. The very case that Plaintiffs cite for that proposition goes on to state that it is an "extraordinary remedy" that is available where there are claims of fraud or breach of fiduciary duty. *See Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006).

AAJ, Wachovia detailed all of the profits and losses from its various hedging positions (which resulted in a net loss of $10,005). Plaintiffs focus on one of those items, related to carry costs, and argue (with no basis) that the item is not properly included in Breakage Costs. After deducting that item, Plaintiffs conclude that Wachovia profited from the Rate Lock Agreement. This claim fails because Plaintiffs are unable to identify any contractual provision that (a) precludes the "carry" item from being a "cost" as defined in the Breakage Costs provision; *and* (b) would entitle Plaintiffs to the alleged profits created after Plaintiffs deduct the carry charges.[28]

The Rate Lock Agreement grants sole authority to Wachovia to determine the Breakage Costs, and renders Wachovia's good faith determination of Breakage Costs "conclusive and binding." Mot. at 26-27; Compl. Ex. B § 3. Paragraph 3 of the Rate Lock Agreement defines Breakage Costs to include "damages, losses, liabilities, costs, fees, and expenses" suffered by Wachovia. *Id*. And Plaintiffs concede that "carry" costs include "[d]irect *costs* paid by an investor to maintain a security position." Opp. at 26 n.16 (emphasis altered). Plaintiffs offer no explanation of why carry costs should not be included in Breakage Costs.[29] And Plaintiffs allege no facts to suggest that Wachovia did not determine Breakage Costs in good faith. Plaintiffs' conclusory assertion that "carry" charges should not be included in "Breakage Costs" is not

---

[28] It is worth noting Plaintiffs' effort to disclaim their own Complaint. The Complaint alleges only that paragraph 4(a) of the Rate Lock Agreement was breached. Compl. ¶ 119. Defendants noted that paragraph 4(a) does not apply unless the Loan is closed and funded. Since it was not, Plaintiffs' claim fails as a matter of law, and should be dismissed. Plaintiffs offer no rebuttal, but in their Opposition argue only that paragraph 3 was breached. Opp. 26-27.

[29] Plaintiffs suggest that "Carry" charges are really "Transaction Costs" for which they should not be responsible. Opp. at 26. This is demonstrably incorrect. First, the contract does not state that "Transaction Costs" will be $0.00, but that the "Transaction Costs Fee" will be $0.00. Thus, whether "carry" charges fit the definition of "Transaction Costs" (as plaintiffs argue) is irrelevant. Second, the "Transaction Cost Fee" provision applies only when the Loan "is actually closed and funded," which is not this case.

sufficient to state a breach of contract claim, particularly where the parties agreed that Wachovia's determination on that issue would be "conclusive and binding."[30]

Even if Plaintiffs were able to unilaterally exclude the carry charges from the Breakage Costs, they offer no basis in contract under which they should recover the resulting alleged "profit." The only provision on which they rely is the penultimate sentence of paragraph 3 of the Rate Lock Agreement. But **neither** of the stated preconditions for application of that sentence have been satisfied.[31] Further, that sentence only requires the return of "profits less costs," which is exactly what AAJ received. See Mot. at 27-28. Because Plaintiffs cannot identify any provision of the Rate Lock Agreement that is breached, Plaintiffs' claim must be dismissed.

## VIII.  Plaintiffs' Unjust Enrichment Claim Is Barred by the Existence of a Contract

Plaintiffs do not seriously contest that there can be no unjust enrichment claim where there is an express contract governing the subject matter of the dispute,[32] but argue that Fed. R. Civ. P. 8(e)(2) allows them to plead the "alternative theories" of contract breach and unjust enrichment, in case the Rate Lock Agreement should "somehow be deemed unenforceable." Opp. at 28 & n.21. That would be true if Plaintiffs had actually stated a claim as to each

---

[30]  In fact, in another section of their Opposition, plaintiffs cite to *Devoine Co. v. Int'l Co.*, 136 A. 37, 38 (Md. 1927), which supports the view that Wachovia's determination of Breakage Costs must be respected:  "When parties to a valid contract refer any question of performance to the decision of one of them, or of a third person, the decision contracted for is final."  *Id.*

[31]  AAJ did not terminate the Rate Lock Agreement, and, as noted in Defendants' Motion, the parties executed the Loan Commitment Agreement, which AAJ concedes is a lawful, binding and enforceable contract, "as of May 25, 2007."  Mot. at 27-28.

[32]  This principal is hardly controversial and, contrary to Plaintiffs' suggestion (Opp. at 28 n.21), has been regularly applied at the motion-to-dismiss stage of litigation.  *See Albrecht v. Comm. on Emple. Bens. of the Fed. Reserve Emple. Bens. Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (finding that plaintiff had "failed to state a claim for unjust enrichment" in part because "there can be no claim for unjust enrichment when an express contract exists between the parties"); *USOP*, 251 F. Supp. 2d at 94 ("[W]hen a complaint alleges the existence of a contract and also claims unjust enrichment, the court shall dismiss the unjust enrichment claim for failure to state a cognizable claim.").

alternative theory, but here they have pleaded themselves out of an unjust enrichment claim by alleging that the Rate Lock Agreement is a "lawful, binding, and enforceable contract." *See* Compl. ¶ 114. Nowhere do Plaintiffs plead in the alternative that the contract is invalid, and of course the Court is not required to take as true facts not alleged in the complaint. Because Plaintiffs have alleged that the Rate Lock Agreement is a lawful, binding, and enforceable contract, their unjust enrichment claim should be dismissed.

## IX.    The Wachovia Defendants Other than Wachovia Bank, N.A. Should Be Dismissed

It is clear from the face of the documents attached to the Complaint that Wachovia Bank, N.A. is the only Wachovia party to the Term Sheet, the Rate Lock Agreement, and the Loan Commitment Agreement. With respect to Plaintiffs' contract claims, in the absence of any allegations (of which there are none) that any other Wachovia party was an actual party in interest to the contracts in question, Wachovia Bank, N.A. should be the only defendant. *See*, *e.g.*, *Shoreham Hotel Ltd. Partnership v. Wilder*, 866 F. Supp. 1, 3 (D.D.C. 1994) (holding, where defendants were not parties to the contracts attached to the complaint, that the plaintiff had failed to state a contract claim against the defendants). Moreover, by stating all its allegations against a single group entity "Wachovia," Plaintiffs fail to allege the specific conduct of each defendant as they must. *See USOP* 251 F. Supp. 2d at 100 ("[A]llegations of fraud must address each defendant individually and plead each instance of fraud with particularity.").

Again attempting to supplement their Complaint, Plaintiffs rely on random references to other Wachovia entities in letterhead and correspondence. But Plaintiffs fail to identify a single legal duty or obligation breached by those entities. Opp. at 40-41. Such allegations would plainly have been insufficient even if Plaintiffs had asserted them in their Complaint. The Wachovia defendants other than Wachovia Bank N.A. should therefore be dismissed.

24

## CONCLUSION

For the foregoing reasons, Count II and Counts IV through X of Plaintiffs' Complaint should be dismissed, and all defendants other than Wachovia Bank, N.A. should be dismissed.

Respectfully submitted,

By:     /s/ Reginald R. Goeke
        Mark W. Ryan (D.C. Bar No. 359098)
        Reginald R. Goeke (D.C. Bar No. 453613)
        Joseph R. Baker (D.C. Bar No. 490802)
        MAYER BROWN LLP
        1909 K Street, N.W.
        Washington, DC  20006-1101
        Telephone:   (202) 263-3000

        *Attorneys for Defendants Wachovia Corporation; Wachovia Bank, N.A.; Wachovia Capital Markets, LLC; Wachovia Securities, LLC; and Sandor Biderman*

Dated:  February 11, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph R. Baker, hereby certify that on February 11, 2008, I caused a true and correct

copy of Defendants' Reply Memorandum of Points and Authorities in Support of Defendants'

Motion To Dismiss to be filed electronically and served electronically through the court's

CM/ECF System.

Dated:  February 11, 2008

      /s/ Joseph R. Baker
Joseph R. Baker (D.C. Bar No. 490802)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, DC  20006-1101
Telephone:   (202) 263-3000
*Attorney for Defendants Wachovia Corporation;*
*Wachovia Bank, N.A.; Wachovia Capital Markets,*
*LLC; Wachovia Securities, LLC; and Sandor*
*Biderman*
