**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAPITOL JUSTICE LLC, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WACHOVIA CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 1:07-cv-02095-RCL |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**

Plaintiffs' Supplemental Memorandum flouts this Court's rules, and demonstrates both the inadequacy of Plaintiffs' Complaint and the futility of permitting a further amendment. Plaintiffs all but concede the insufficiency of their allegations by seeking for the second time to add "new" allegations, this time based on a misreading of selected phrases from an investor conference transcript. Considered as a whole, the transcript actually undercuts Plaintiffs' fraud theories. Similarly, Plaintiffs' improper attempt to supplement their legal authority – through citation to a factually inapposite case decided six weeks ***before*** Plaintiffs filed their opposition brief – is too little, too late. Defendants have little choice but to correct Plaintiffs' factually inaccurate and legally irrelevant arguments.

*1.    Procedural Deficiencies.*    Plaintiffs' Supplemental Memorandum ("Supp.") is procedurally deficient for several reasons. First, it violates Local Rule 7, which provides only for opening, opposition and reply briefs.[1] Because a motion to dismiss by its nature is limited to

---

[1] *See also United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975) ("Clearly, nothing but delay, unnecessary work, and unwarranted expense can result from the routine filing of . . . surreply papers which do nothing more than restate in a different form or with additional detail material set forth in the moving and opposing papers.").

the Complaint's allegations, it is improper to use the pretext of a "Supplemental Memorandum" to submit "recently discovered evidence." *See CareToLive v. von Eschenbach*, 525 F. Supp. 2d 938, 945 (D. Ohio 2007) (striking as improper such a submission). Second, to the extent they seek to amend their Complaint (Supp. at 4 n.2), Plaintiffs fail to comply with Local Rules 7(i) and 15.1, which require them to submit the proposed amended pleading.[2] Third, Plaintiffs' motion to amend fails to comply with Local Rule 7(m), which requires counsel to discuss anticipated motions with opposing counsel. This omission is all the more glaring given that counsel for the parties met in person just hours before Plaintiffs *sub silentio* filed their Supplemental Memorandum.

*2.*     *Factual Inaccuracies.*  Selectively quoting snippets from a 27-page transcript, Plaintiffs misconstrue Wachovia's statements regarding the 2007 CMBS "market meltdown." First, Plaintiffs argue that Wachovia was "backing out of CMBS loan transactions" and "'pulling back' from CMBS commitments 'in early 2007.'" Supp. at 2, 3. This is just wrong. The transcript states that Wachovia "pulled back on *participating* in *several large deals*" even though Wachovia had "the opportunity to be part of them." Tr. at 20-21. This is not "pulling back from . . . *commitments*" (Supp. at 2-3), nor even pulling back from the CMBS market as a whole,[3] but simply choosing not to participate in some of the largest of those transactions. Nowhere does the transcript suggest that Wachovia backed out of committed transactions in the second quarter of 2007.

---

[2] Indeed, given that a motion to dismiss is limited to the pleadings, Plaintiffs' attempt to submit "recently discovered evidence" can only be considered a motion to amend the pleadings.

[3] To the extent that Plaintiffs suggest that Wachovia pulled back from the CMBS market as a whole in early 2007, the transcript refutes such a claim. The transcript emphasizes that Wachovia had $20 billion of CMBS positions in its accounts in the second quarter of 2007, that Wachovia "ended up hung with some exposures," and that it started realizing losses and selling positions thereafter. Tr. at 6, 21.

Second, Plaintiffs argue that "Wachovia knew of the 'market meltdown' before entering the Loan Commitment." Supp. at 1. The transcript – when quoted in full – refutes that claim. Wachovia's CFO stated: "As we began to see the market meltdown in the second quarter, [we] had a little bit less than $20 billion of CMBS positions . . . ." Tr. at 6. This is not an "admission" that Wachovia knew "that the CMBS sector *had experienced* a 'market meltdown'" at that time. Supp. at 1 (emphasis added). Rather, the transcript demonstrates that Wachovia *did not* adequately foresee the "market meltdown" in the second quarter of 2007, and that in retrospect, as the meltdown *began*, Wachovia was caught with $20 billion of CMBS positions on its books. The transcript goes on to note that Wachovia recorded a $1.1 billion loss, and has been "very active in derisking the portfolio *since then*," reducing its CMBS exposure almost $11 Billion since the *third quarter* of 2007. Tr. at 6, 20. Contrary to Plaintiffs' argument, the transcript demonstrates that Wachovia was heavily invested in the CMBS market when it entered the Loan Commitment with Plaintiffs, and thus refutes any suggestion of foreknowledge of the coming meltdown.

Third, Plaintiffs argue that Wachovia went "from first to fifth place in the market," and suggest that this demonstrates Wachovia's foreknowledge in early 2007 of the "market meltdown." Supp. at 2. Plaintiffs again misread the transcript. The referenced passage[4] relates to a different segment of the CMBS market (top 28 deals over $500 million) than the one at issue here (CMBS loans under $100 million).[5] And the passage relates to a ranking for the *entire* year 2007 (Tr. at 6), not just the first half of 2007.

---

[4] The transcript states: "But if you look at the top 28 deals that were done in 2007 being deals that were over $500 million, we ranked fifth." Tr. at 6.

[5] Wachovia's decision not to participate in certain large deals, even at the expense of its position on the "lead tables," rebuts Plaintiffs' central fraud theory – that Wachovia was so blinded by its desire to obtain "trophy properties" that it proceeded with loans it knew it could not complete.

3

Plaintiffs' reliance on inaccurate quotations demonstrates the futility of any amendment to the Complaint. The transcript, if incorporated into Plaintiffs' complaint, would defeat the very inference that Plaintiffs ask this Court to draw. Nor could any purported "new evidence" alter the fact that the integration clause precludes Plaintiffs' fraud or misrepresentation claims.

***3. Plaintiffs' Supplemental Authority Is Unpersuasive and Untimely.*** In their Supplemental Memorandum, Plaintiffs for the first time cite *Langley v. Prudential*, No. 07-cv-00404-JMH, 2007 WL 4365423 (E.D. Ky. Dec. 12, 2007), non-binding precedent (currently on appeal) issued more than six weeks ***prior*** to the date of Plaintiffs' opposition memorandum. If Plaintiffs intended to rely on *Langley*, they could and should have cited it in their opposition.

In any event, *Langley* is inapposite, turning on specific facts of that case that are not present here. First, Plaintiffs in *Langley* did not assert a fraud claim against Prudential, limiting their claims, as Plaintiffs should have here, to contract-based claims. The concern of the court was directed to Prudential's efforts to collect millions of dollars on a letter of credit under a contract that Prudential stated it would not honor. No similar conduct occurred here. *Id.* at *1, *4. Second, in *Langley*, the "material adverse change" ("MAC") clause excepted from its coverage – using the phrase "[e]xcept as expressly provided herein" – express promises in the loan application. *Id.* at *3. Relying solely on that language, the Court found that the loan application's rate lock provision was such an express promise, and that the MAC provision could not alter the rate lock agreement. Here, there are no exceptions in the "material adverse change" clause. Further, the parties' negotiating history (as alleged in the Complaint), and the repeated inclusion of the MAC provision (in both the Term Sheet and the Loan Commitment), confirm that AAJ understood it was bearing the risk of material adverse change in the credit markets. Third, *Langley* involved a preliminary injunction motion, and the Court sought to preserve the

4

*status quo* until a decision on the merits could be reached. *Id.* at *2. No such considerations apply here. In short, not only are Plaintiffs late in citing the *Langley* decision, but that decision is inapplicable to the facts as alleged here.

                                Respectfully submitted,

                                By:    /s/ Reginald R. Goeke
                                    Mark W. Ryan (D.C. Bar No. 359098)
                                    Reginald R. Goeke (D.C. Bar No. 453613)
                                    Joseph R. Baker (D.C. Bar No. 490802)
                                    MAYER BROWN LLP
                                    1909 K Street, N.W.
                                    Washington, DC  20006-1101
                                    Telephone:   (202) 263-3000

                                    *Attorneys for Defendants Wachovia Corporation; Wachovia Bank, N.A.; Wachovia Capital Markets, LLC; Wachovia Securities, LLC; and Sandor Biderman*

Dated:   March 21, 2008

## CERTIFICATE OF SERVICE

I, Joseph R. Baker, hereby certify that on March 21, 2008, I caused a true and correct copy of Defendants' Motion to Strike Plaintiffs' Supplemental Memorandum, together with the accompanying Memorandum of Points and Authorities and Proposed Order, to be filed electronically and served electronically through the Court's CM/ECF System.

Dated: March 21, 2008

      /s/ Joseph R. Baker
Joseph R. Baker (D.C. Bar No. 490802)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000
*Attorney for Defendants Wachovia Corporation; Wachovia Bank, N.A.; Wachovia Capital Markets, LLC; Wachovia Securities, LLC; and Sandor Biderman*