**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAPITOL JUSTICE LLC and AMERICAN
ASSOCIATION FOR JUSTICE,

               Plaintiffs,

     v.

WACHOVIA BANK, N.A.,

               Defendant.

Civil Action No. 1:07-cv-02095-RCL

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
OF DISMISSAL OF COUNT II OF THE AMENDED COMPLAINT**

       Despite extensive briefing by the parties and a reasoned decision by this Court, Plaintiffs now ask the Court to reconsider its dismissal of Count II of the Amended Complaint (Breach of Rate Lock Agreement).  Plaintiffs' principal argument simply repeats the argument Plaintiffs made—and this Court rejected—in opposition to Wachovia's Motion to Dismiss.  In the alternative, Plaintiffs now assert a new legal theory—the prevention doctrine—that was available to Plaintiffs, but not made, during the briefing on Wachovia's Motion to Dismiss.  Finally, Plaintiffs conjure up imagined inconsistencies within the Court's Order in an attempt to justify a different decision.  None of those arguments, however, are the types of arguments that justify reconsideration.  "[C]onsiderations of finality, predictability, and not wasting judicial resources"[1] counsel that Plaintiffs should not so lightly impose on Defendant, and this Court, the costs of relitigating the very issues that have already been considered and decided.

       In any event, Plaintiffs' arguments fail on the merits.  Plaintiffs simply cannot explain how Wachovia may have breached the Rate Lock Agreement by deducting $10,005 of Breakage

---

[1]    *Casanova v. Marathon Corp.*, 246 F.R.D. 376, 379 (D.D.C. 2007).

Costs from the $1.78 million it returned to Plaintiffs following the termination of the Rate Lock Agreement. Plaintiffs' assertion that Wachovia did not incur "Breakage Costs" does not withstand factual scrutiny, and its claim that "carry costs" may not be included in Breakage Costs cannot withstand legal scrutiny. Plaintiffs' new argument based on the prevention doctrine is simply inapplicable, both because Plaintiffs assumed the risk of nonperformance by Wachovia and because there were no conditions precedent to Wachovia's performance that the prevention doctrine might have excused. Finally, the logical inconsistencies that Plaintiffs purport to identify within the Order simply do not exist. Thus, even if the Court reconsidered its prior Order, Plaintiffs simply cannot state a claim for breach of the Rate Lock Agreement.

## I. PLAINTIFFS' MOTION FOR RECONSIDERATION FAILS TO MEET THE HIGH STANDARD NECESSARY TO JUSTIFY RECONSIDERATION.

"Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (internal quotation marks omitted). Federal Rule of Civil Procedure Rule 54(b) allows reconsideration only when "justice requires."[2] This standard "is a shorthand for more concrete considerations," such as where the Court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh*, 383 F. Supp. 2d at 101 (internal quotation marks omitted). None of these circumstances are present here.

---

[2] Rule 54(b) governs reconsideration of "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . ." Fed. R. Civ. P.54(b).

Plaintiffs do not even address this high standard for reconsideration,[3] and make no effort to establish how or why their arguments meet it. Neither the law nor the facts have changed since the parties briefed this issue. And Plaintiffs do not suggest that the Court "patently misunderstood" or misapprehended their argument, or that the Court's Order reached beyond the adversarial issues presented by the Parties. Rather, Plaintiffs' principal argument—that "carry costs" cannot be included in "Breakage Costs"—simply restates the argument Plaintiffs made in their opposition to Defendant's Motion to Dismiss. The courts are clear that "[m]otions for reconsideration 'are not simply an opportunity to reargue facts and theories upon which a court has already ruled.'" *Dalal v. Goldman Sachs & Co.,* 541 F. Supp. 2d 72, 75 (D.D.C. 2008) (quoting *Black v. Tomlinson,* 235 F.R.D. 532, 533 (D.D.C. 2006)).

Plaintiffs' second argument asserts an entirely new legal theory based on the doctrine of "prevention" under North Carolina law. Although that doctrine is long-existing—Plaintiffs' own cases date back to 1906—Plaintiffs assert it in their reconsideration motion for the first time. Reconsideration motions are not opportunities to litigate new legal theories seriatim. In fact, "it is a cardinal tenet of federal-civil practice that a court—trial or appellate—will not consider matters raised for the first time in a motion for reconsideration." *Summitt Investigative Serv., Inc. v. Herman*, 34 F.Supp.2d 16, 26-27 (D.D.C. 1998).

Plaintiffs' final arguments hinge on imagined inconsistencies between the Court's rulings on Counts VII and X and its ruling on Count II. No such inconsistencies exist. In any event,

---

[3] Indeed, Plaintiffs erroneously rely on the standard set out for cases decided under Rule 59(e) rather than 54(b). *See* Pls.' Mot. For Recons. of Dismissal ("Mot.") at 5; *Lance v. United Mine Workers*, 400 F. Supp. 2d 29, 31 (D.D.C. 2005); *Broudy v. Mather*, 335 F. Supp. 2d 1, 4 (D.D.C. 2004). If Plaintiffs' motion is indeed governed by Rule 59, it has been filed far outside that Rule's ten-day time limit, and should be rejected out of hand. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.").

reconsideration motions are properly directed to "error[s] *not of reasoning* but of apprehension." *Singh*, 383 F. Supp. 2d 101 (emphasis added). Because Plaintiffs fail to identify any alleged error of apprehension, there is no basis for this Court to reconsider its decision on the Motion to Dismiss.

Finally, in requesting leave to amend their complaint "to correct any perceived deficiency," Plaintiffs have violated Local Rules 7(i) and 15.1, which require them to submit the proposed amended pleading. Having failed to fulfill this minimal obligation, Plaintiffs should not be permitted to amend their complaint.[4]

In short, Plaintiffs offer this Court no valid reason even to reconsider its Order dismissing Count II of the Amended Complaint. Before Plaintiffs should be permitted to take the Defendant's and the Court's time in "battl[ing] for the Court's decision," *Singh*, 383 F. Supp. 2d at 101, Plaintiffs must show good reason to permit such reconsideration. Plaintiffs have failed in that obligation, and this Court need not even consider the merits of Plaintiffs' arguments.

## II.     PLAINTIFFS' RECONSIDERATION MOTION FAILS ON ITS MERITS.

### A.     Plaintiffs Are Incorrect In Arguing That Defendant Did Not Incur "Breakage" Costs.

Plaintiffs principally argue that Wachovia "incurred no breakage costs," and that the deduction of "carry costs" was impermissible. Both arguments are demonstrably false and belied by the language of the Rate Lock Agreement. Plaintiffs then second-guess the contractual provisions referenced by the Court in its Order. These arguments are similarly misplaced—the Court's analysis properly responded to the arguments raised by Plaintiffs in their Opposition to Wachovia's Motion to Dismiss.

---

[4]     Plaintiffs have also failed—once again—to comply with Local Rule 7(m), which requires counsel to discuss anticipated motions with opposing counsel.

1.    **Wachovia Incurred – and Specifically Identified – Breakage Costs for Which AAJ is Responsible.**

Plaintiffs first argue that Wachovia did not incur "Breakage" costs because it "used the term 'carry,' not 'Breakage Costs,'" in its Statement to AAJ. Mot. at 7.  *See also,* Mot. at 5 ("Wachovia's Statement identifies no 'Breakage Costs.'  Indeed, the word 'Breakage' does not even appear in the Statement."); Mot. at 7 ("Had these charges been Breakage Costs, Wachovia could have written 'Breakage' on the Statement. It did not.").  This is simply wrong.  The statement that Wachovia sent to AAJ, attached as Exhibit A,[5] specifically identified "***Hedge Breakage Loss***" as one of only four fees that accounted for the $28,105 that Wachovia withheld from AAJ's deposit.  Ex. A (last item under "Fees" column, before the "Total" line).  The Hedge Breakage Loss is identified as $10,005, the very amount of "loss" that Plaintiffs identify in paragraph 95 of the Amended Complaint.  Based on Plaintiffs' own logic, because Wachovia identified the costs as "Breakage" costs, Plaintiffs have no reason to claim that they are not Breakage Costs.

After identifying the Breakage Loss, Wachovia's Statement then sets forth its determination of that Breakage Loss.  It specifically lists the hedging instruments entered, the rates at lock, and the current market rates for each instrument.  Based on that data, it summarizes

---

[5]    This Court may consider the Statement provided by Wachovia to AAJ (attached as Exhibit A) in ruling on Defendants' Motion to Dismiss.  "[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd per curiam*, 38 F. App'x 4 (D.C. Cir. 2002).  *See also Brown v. Bureau of Prisons*, 498 F. Supp. 2d 298, 301 (D.D.C. 2007) (Court may consider documents incorporated by reference in the complaint); *Arnold v. United States Secret Serv.*, 524 F. Supp. 2d 65, 67 (D.D.C. 2007).  Plaintiffs' motion for reconsideration here is almost entirely dependent on the adequacy of the Statement provided by Wachovia, and Plaintiffs repeatedly reference that document in their Amended Complaint. *See* Am. Compl. ¶¶ 95, 117 (quoting extensively from the Statement, including itemization of the amounts listed on the Statement).

the hedge profit and loss for each hedge position, the total carry cost associated with the hedge, and the sum of those items, which equals the $10,005 identified as Hedge Breakage Loss. Ignoring all other items on that statement, Plaintiffs focus only on the "carry cost" item and argue (again) that it is not a proper item to be included in the "Breakage Costs" calculation. Plaintiffs fail to articulate any reasonable basis for excluding those "carry costs" from the total Breakage Cost calculation.

Plaintiffs first argue (as they did in their opposition to Defendants' Motion to Dismiss) that "carry" costs are "Transaction Costs," and therefore cannot be "Breakage Costs." This syllogism fails for two reasons. First, it ignores the definition of "Breakage Costs." Breakage Costs include all "damages, losses, liabilities, costs, fees and expenses" that Wachovia may incur. Am. Compl. Ex. B ¶ 3, at 2. Plaintiffs offer no reason that "carry costs" should be singled out and excluded from the "costs" that make up "Breakage Costs."

Second, even if "carry costs" are included in "Transaction Costs," Plaintiffs assume that costs that fall into "Transaction Costs" may not also be included in "Breakage Costs." This is simply incorrect. By this logic, Breakage Costs could not include any costs "incurred by Wachovia in entering into . . . the Hedging Arrangements." Am. Compl. Ex B ¶ 4(a), at 2. For example, the cost of buying a Treasury swap could not be included in Breakage Costs, but the revenue from reversing this transaction could be included. This is simply nonsensical. The costs of breaking a hedging arrangement includes the sum of all costs incurred in entering and maintaining that arrangement less the profits generated as a result of that arrangement.

Nor can Plaintiffs justify as a practical matter the result that they seek—a decision that awards them $672,166 in alleged "profits" from the hedging instruments, while simultaneously imposing on Wachovia $682,171 in costs associated with the hedging arrangement. Plaintiffs

suggest no reason why Wachovia would have agreed to such an arrangement. Indeed, the parties' agreements are to the contrary—they make it clear that it is AAJ, not Wachovia, that is responsible for all costs and expenses related to the financing. *See, e.g.,* Rate Lock Agreement, Am. Compl. Ex. B ¶ 3, at 2 ("Borrowers shall be fully responsible for all Breakage Costs"); Term Sheet, Am. Compl. Ex. A at 7 ("Borrower shall be responsible for all costs and expenses incurred by Lender related to the Financing.").

### 2. Plaintiffs Err In Second-Guessing This Court's Reference To Transaction Costs.

Plaintiffs next attack one sentence in the Court's opinion—a sentence that they concede is (at most) no more than an "alternate basis" for allowing Wachovia to deduct carry charges. Mot. at 8. Plaintiffs suggest that it was logically inconsistent for the Court to invoke the definition of "Transaction Costs" after having found that the provision governing "Transaction Costs Fees" did not apply.[6]

There is simply no inconsistency. The Court correctly concluded that "Transactions Costs" is a separately defined term from "Transaction Costs Fee." Order at 7. While the "Transaction Costs Fee" is set at zero in the event the loan is closed, the parties plainly anticipated that there would in fact be Transaction Costs, which include the "costs and expenses associated with and incurred by Wachovia in entering into and maintaining the Hedging Arrangement." Am. Compl. Ex B ¶ 4(a), at 2. The Court properly considered that language as part of its contextual analysis of the types of costs that may be included in the Breakage Costs

---

[6]    Plaintiffs suggest that Section 4 would provide "an alternate basis for precluding Wachovia from recovering Transaction Costs," "because the parties plainly agreed that the Transaction Costs Fee would equal zero." Mot. at 9. This is wrong for the same reasons stated in Wachovia's motion to dismiss: The Transaction Costs Fee is set to zero only in the event the Loan is closed and funded. Section 4 says nothing about whether Wachovia can recover Transaction Costs, or any other costs, in the event the Loan is not closed and funded.

incurred by Wachovia.  Indeed, this provision underscores that at every turn, the parties agreed

that AAJ—as the party requesting the rate lock—would bear the risks relating to the transaction.

*See, e.g.*, Am. Compl. Ex. B ¶ 6(e) ("Borrowers are aware of the risks associated with a Rate

Lock and a Transaction and is willing to assume those risks.").

> **3.    Plaintiffs Incorrectly Assign Error To This Court's Reference To The Penultimate Sentence In Paragraph Three Of The Rate Lock Agreement.**

Plaintiffs argue that the Court erred by referencing the penultimate sentence in paragraph

3 of the Rate Lock Agreement.  Mot. at 9; *see* Order at 7 ("Indeed, the Rate Lock Agreement

specifically provides that 'all profits less costs shall be released to the Borrower.'").  Plaintiffs

argue that the language is inapplicable because AAJ never elected to terminate the Agreement.

Mot. at 9.  But the Court addressed that provision in its Order only because ***Plaintiffs*** expressly

relied on that section, in both their Amended Complaint and their Opposition Brief, to suggest

that they were entitled to alleged "profits" Wachovia had made.  *See, e.g.,* Am. Compl. ¶ 122;

Opp. Br. at 27.  The Court in its Order simply considered Plaintiffs' argument and correctly

found that any "profits" alleged by Plaintiffs were offset by costs.  Hence, even had this

provision applied (as Plaintiffs asserted it should), there were no profits to be returned.[7]  In any

---

[7]    Plaintiffs' suggestion that the term "costs" is ambiguous defies reason.  *See* Mot. at 10.
Plaintiffs make two errors.  First, Plaintiffs assume *ipse dixit* that the presence of defined terms
that include the word "cost" somehow makes the undefined term "cost" ambiguous.  A more
logical conclusion is that when uncapitalized, the term "cost" is used expansively according to its
dictionary definition.  *See, e.g.,* BLACK'S LAW DICTIONARY 345 (6th ed. 1990) ("The sum or
equivalent expended, paid or charged for something").  Second, Plaintiffs assume that the terms
"Breakage Costs, Transaction Costs, and Wachovia's Expenses" are mutually exclusive
categories of "costs."  This is incorrect. There is significant overlap between those terms.  For
example, the term "Wachovia's Expenses" is *defined* to include collectively both Breakage Costs
and Transaction Costs.  Am. Compl. Ex. B ¶ 2(b).  Further, as noted previously, to exclude
certain Transaction Costs from the term Breakage Costs would illogically prevent Wachovia
from recouping any of the costs of entering into hedging instruments in the event the Loan did
not fund. There is no basis for such an interpretation.

event, because all parties now agree that the penultimate sentence in Paragraph 3 is inapplicable, this argument is moot.

### 4.  Plaintiffs Are Not Entitled To Discovery On Their Failed Claim.

Finally, Plaintiffs suggest that even if the Court agrees with Wachovia's arguments, it should allow AAJ to pursue discovery into what Wachovia's carry charges actually were. Plaintiffs again forget the directive of *Twombly*. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (requiring plaintiff to plead enough facts "to state a claim to relief that is plausible on its face").  The Supreme Court held that a plaintiff does not get access to discovery—together with the ancillary costs attendant to discovery—unless and until he states a viable legal claim.  *See id.* at 1966-67.  Plaintiffs here fail to state any claim for breach of the Rate Lock Agreement.  Plaintiffs' failings should not be rewarded with a license for a fishing expedition.

### B.    Plaintiffs' Prevention Argument Has Been Waived, And In Any Event The Doctrine Is Inapplicable Here.

Plaintiffs assert in their Motion for Reconsideration—for the first time in this action—that the "prevention" doctrine under North Carolina law precludes Defendant from obtaining any Breakage Costs under Paragraph 3 of the Rate Lock Agreement.  Not only did Plaintiffs fail to assert the prevention doctrine in either their Amended Complaint or their two briefs in opposition to Defendant's Motion to Dismiss, Plaintiffs did not even allege in their Amended Complaint a breach of Paragraph 3 of the Rate Lock Agreement (aside from its penultimate sentence).  *See* Am. Compl. ¶¶ 113-127; Def.'s Reply Br. at 22 n.28.   By not raising the prevention doctrine argument earlier, Plaintiffs have waived it.  *See James v. England*, 226 F.R.D. 2, 7 (D.D.C. 2004) ("[A]rguments that should have been previously raised, but are only raised for the first

time in a motion for reconsideration, will not be entertained by this Court."); *Summit Investigative Serv.*, 34 F. Supp. 2d at 26-27.

In any event, Plaintiffs' prevention doctrine is inapplicable in this case.  Paragraph 3 of the Rate Lock Agreement expressly provides that "[i]n the event that . . . the Loan . . . shall not be closed and funded by Wachovia *for any reason* prior to the expiration of the fixed rate period," Borrowers acknowledge that Wachovia may incur Breakage costs, and agree to be "fully responsible" for those Breakage Costs.  Am. Compl. Ex. B ¶3, at 2 (emphasis added). Through this provision, Plaintiffs assumed responsibility for Breakage Costs if Wachovia did not close or fund the loan *for any reason*.  Plaintiffs now assert that the "prevention" doctrine precludes Wachovia from exercising its rights under this provision, and further argue that the term "for any reason" must be limited on public policy grounds to "for any lawful reason." Plaintiffs' argument is misplaced for at least three reasons.

First, "[t]here exists a well-recognized exception to the [prevention] doctrine: 'The prevention does not apply where, under the contract, one party assumes the risk that fulfillment of the condition precedent will be prevented.'" *W&G Seaford Assoc., L.P. v. E. Shore Mkts., Inc.*, 714 F. Supp. 1336, 1341 (D. Del. 1989).  *See also*, *A.I.C. Ltd. v. Mapco Petroleum Inc.*, 711 F. Supp. 1230, 1238-39 (D. Del.) (same), *aff'd*, 888 F.2d 1378 (3d Cir. 1989) (table); *District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1023 (D.C. Cir. 1985) ("[W]hen a contract 'authorizes' a party to prevent a condition from occurring, 'there is no prevention.'"). Courts have repeatedly found that where a contract includes the term "for any reason," such a provision is an express assumption of risk of non-performance, rendering the "prevention" doctrine inapplicable.  *See, e.g.*, *District-Realty Title Ins.*, 767 F.2d at 1024 (rejecting prevention doctrine argument, holding that "[b]y stating that the funds were to be returned to Ensmann if

settlement did not occur '*for any reason*,' the contract allocates to Dumbarton the risk of nonsettlement, regardless of cause.") (emphasis added); *Robert L. Ferman & Co. v. Gen. Magnaplate Corp.*, 33 F.R.D. 326, 329 (D.N.J. 1963) ("Since [the] defendant agreed to register if exemption were not possible *for any reason*, defendant expressly assumed the risk that one or both of the underwriters would be the cause of the impossibility of obtaining the exemption.") (emphasis added). In this case, paragraph 3 of the Rate Lock Agreement expressly provides that if the Loan is not closed and funded *for any reason* AAJ would be responsible for all Breakage Costs. Through that provision, AAJ expressly assumed the risk of non-performance.[8]

Second, the prevention doctrine only applies to excuse the performance of a condition precedent by one party where the other party "prevents the performance of [the] condition" by that party. *Cater v. Barker*, 617 S.E.2d 113, 117 (N.C. App. 2005) (internal quotation marks omitted). In this case, there is no performance to excuse nor any condition precedent that was not performed. Rather, the Rate Lock Agreement simply determines how the parties will allocate certain costs and fees based on specific circumstances that may arise. The only condition precedent to entry of the Rate Lock was AAJ's payment of the Mandatory Lock Fee. The remaining provisions addressed what fees and costs would be charged to AAJ under various

---

[8]     The structure of the Rate Lock Agreement underscores the conclusion that AAJ assumed the risk for Breakage Costs if Wachovia did not fund the Loan for any reason. Other provisions of the Rate Lock Agreement addressed how the Mandatory Lock Fee would be refunded in other events (such as AAJ not executing the Loan). For example, paragraph 4 of the Rate Lock Agreement provides that in the event that AAJ fails to execute the Loan, Wachovia would be entitled to the entire Rate Lock Fee. Similarly, the penultimate sentence of Paragraph 3 outlines what will happen if a Loan Commitment does not issue by May 30. Thus, the reference in paragraph 3 to the Loan "not be[ing] closed or funded *by Wachovia* for any reason" plainly anticipates circumstances where *Wachovia* will choose not to close or fund the loan even after the Loan Commitment is entered. The Loan Commitment Agreement itself includes a provision permitting Wachovia to terminate the Loan Commitment in the event of a material adverse change in the credit markets. Thus, AAJ plainly assumed the risk that if Wachovia did not fund the Loan because it asserted its rights under the material adverse change provision, AAJ would be responsible for any breakage costs.

circumstances, including funding of the Loan, default on the Loan by AAJ, and non-funding of the Loan "for any reason" by Wachovia. Because there is no condition precedent in the Rate Lock Agreement to be excused, the "prevention" doctrine is simply not applicable.

Third, Plaintiffs similarly err in relying on cases applying the "illegality" doctrine. Mot. at 12 n.11. Under the illegality doctrine, courts will prevent a party from exercising a right under a contract where doing so would violate existing law or public policy. But, Plaintiffs do not (and could not) suggest that the alleged breach of contract here rises to the level of violation of law or public policy. Thus, there is simply no basis for Plaintiffs to assert that "for any reason" must be interpreted as "for any lawful reason." Mot. at 2. Nor can Plaintiffs cite any authority to suggest that the reason given by Wachovia for not funding the loan – the existence of a material adverse change in the credit markets—is somehow not a "lawful" reason. Even if this Court found that there was not a material adverse change in the credit markets, Wachovia's assertion of that right would still be "lawful," therefore triggering Plaintiffs' obligation to pay Breakage Costs even under Plaintiffs' theory.

## C. The Court's Decision Concerning Plaintiffs' Other Counts Is Not Inconsistent With Respect To Its Decision On Count II.

Despite Plaintiffs' efforts to suggest some imagined inconsistencies in the Court's Order, no such inconsistencies exist. Plaintiffs first argue that the Court's decision not to dismiss Count X (for an accounting) is inconsistent with its decision to dismiss Count II, because of the "necessary conclusion from the Court's ruling on Count X" that Wachovia may have breached the requirement in paragraph 3 to provide a "statement setting forth its determination of Breakage Costs." This logic fails for two reasons. First, as Wachovia noted in its Reply Memorandum in Support of its Motion to Dismiss, Plaintiffs never alleged in their Amended Complaint that the "Statement" provided by Wachovia failed to meet the requirements of Section

3 of the Rate Lock Agreement. *See* Am. Compl. Count II; Def. Reply Br. at 21. Plaintiffs cannot now revive Count II by claiming some inconsistency between the Court's ruling and a Rate Lock breach claim that Plaintiffs never even alleged in that Count.

Second, the Court in its decision with respect to Count X was applying a very different standard than would have been applied had Plaintiffs asserted a breach of the "Statement" requirement of the Rate Lock Agreement. In its decision, the Court merely noted that it was not clear that the "Statement" required under the Rate Lock Agreement would provide the same detail as that which would be required under an "accounting." Thus, it permitted the accounting claim to go forward. Plaintiffs would have had a much higher hurdle stating a claim under the "Statement" requirement in Paragraph 3. Plainly, Wachovia did provide AAJ a "statement setting forth its determination of Breakage Costs," as required in Paragraph 3. That statement even provided "a detailed listing of the transactions" making up the Hedge positions, as the Court suggested it might. *See* Order at 19. Because Wachovia did provide a statement as required in Paragraph 3, any claim based on the "statement" provision in paragraph 3 would be futile—perhaps explaining AAJ's decision not to assert such a claim in the first place.[9]

Plaintiffs next argue that it was inconsistent to dismiss Count II, and then to also dismiss as duplicative Count VII (for breach of duty of good faith). This is another red herring. As Defendant explained in its opening Brief on the Motion to dismiss: "Even if [the contract claim is] subject to dismissal for failure to state a claim, this rule [that the implied covenant of good

---

[9]    In light of the Statement, which is now properly before the Court, this Court may choose to amend its decision with respect to Plaintiffs' accounting claim. To the extent that the Court based its decision on the accounting claim on any perceived ambiguity in the term "statement" under the Rate Lock Agreement, the Statement now before the Court should address any such concerns. The Statement here did "compile a more detailed listing of the transactions" underlying the hedging arrangement. This is precisely what the Court suggested might be provided in an accounting. *See* Order at 19. Having provided such a listing, there is no basis for Plaintiffs' claim that an accounting is due, and that claim should similarly be dismissed.

faith does not give rise to an independent cause of action] applies so as to prevent plaintiffs from getting 'two bites at the same apple' by *bringing* a second claim for the same conduct under the implied duty of good faith and fair dealing." Opening Brief at 23 (emphasis added). As in *Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.*, No. 04-838, 2006 U.S. Dist. LEXIS 24510, at *14 (D.D.C. Apr. 28, 2006) (Lamberth, J.), *aff'd*, No. 06-7092, 2006 U.S. App. LEXIS 28692 (D.C. Cir. Nov. 17, 2006), it is appropriate to dismiss a claim based on breach of the duty of good faith and fair dealing while also dismissing the related breach of contract claim. Thus, there is no inconsistency in these decisions.

> **D.    Plaintiffs' Newly Asserted Claim Of Failure of Mitigation By Wachovia Fails As A Matter of Law.**

In their motion for "reconsideration," Plaintiffs assert for the first time a new theory of liability—that Wachovia failed to mitigate the alleged damages suffered by AAJ. Nowhere in Count II is there any assertion of any breach of any duty to mitigate. Nor did Plaintiffs raise this claim in their opposition to Wachovia's motion to dismiss. As such, this portion of Plaintiffs' motion for reconsideration does not seek reconsideration at all—it seeks to import a brand new theory into a count that the Court has already dismissed.

In any event, Plaintiffs' interest in asserting a "mitigation" argument with respect to Wachovia's alleged breach of the Loan Commitment Agreement provides no basis for reinstituting Plaintiffs' claim for breach of the Rate Lock Agreement. Such a mitigation argument does not constitute a separate breach of contract cause of action standing alone. Because Plaintiffs failed to state any other basis for their Rate Lock Breach claim, preserving Plaintiffs' "mitigation" argument is not sufficient to permit the Rate Lock Breach claims to continue.

Even if Plaintiffs could, or even attempted to, state a claim based on the alleged failure to mitigate, Plaintiffs would have failed to plead facts sufficient to support even that hypothetical claim.  Plaintiffs argue in their brief that "the gains realized on the hedging arrangements decreased over this period," and that "Wachovia's unjustified delay likely increased the amount of one or both of these [Carry or Breakage] costs."  Mot. at 14.  Yet, Plaintiffs simply fail to state any facts that would suggest that the alleged "loss" suffered by AAJ (a total of $10,005 in Breakage Costs) would have been less if the Rate Lock Agreement had been terminated at an earlier time.  *See Twombly*, 127 S. Ct. at 1974 (requiring plaintiff to plead enough facts "to state a claim to relief that is plausible on its face").

Most significantly, the very documents that AAJ relies upon in its Amended Complaint belies its claim that Wachovia failed to "exercise reasonable diligence to minimize damages." Mot. at 16 (quoting *Tillis v. Calvin Cotton Mills, Inc.,* 111 S.E.2d 606, 613 (N.C. 1959)).  In its letter terminating the Loan Commitment Agreement, Wachovia specifically asked AAJ to "please call [] as soon as possible . . . to process the termination of the Rate Lock Agreement." *See* October 22 Letter, Ex. 1 to Mot. to Dismiss.  In its Reconsideration Motion, AAJ does not dispute that it "could have terminated the Rate Lock Agreement following Wachovia's termination of the Loan Commitment Agreement," but states that AAJ "had no interest in terminating the Rate Lock Agreement" at that time.  Mot. at 15 n.13.  Refusing to take responsibility for its own conduct, AAJ now has the temerity to assert that its own decision to not terminate the Rate Lock Agreement should serve as an independent basis for a new claim against Wachovia.  Had AAJ asserted this hypothetical legal claim in its Amended Complaint, the claim would have been dismissed both on legal and factual grounds.  Such a claim should pose no basis for Plaintiffs' Motion for Reconsideration.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Reconsideration of the Dismissal of Count II of the Amended Complaint, and should Dismiss Count X of the Amended Complaint.

Dated:   August 1, 2008

Respectfully submitted,

By:   /s/ Reginald Goeke
    Mark W. Ryan (D.C. Bar No. 359098)
    Reginald R. Goeke (D.C. Bar No. 453613)
    Joseph R. Baker (D.C. Bar No. 490802)
    MAYER BROWN LLP
    1909 K Street, N.W.
    Washington, DC  20006-1101
    Telephone:   (202) 263-3000

    *Attorneys for Defendant Wachovia Bank, N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Reginald R. Goeke, hereby certify that on August 1, 2008, I caused a true and correct copy of Defendant's Response to Plaintiffs' Motion for Reconsideration of Dismissal of Count II of the Amended Complaint to be filed electronically and served electronically through the Court's CM/ECF System, and to be delivered by hand that same day to the following persons at their offices:

> Jeremy W. Schulman, Esq.
> David S. Wachen, Esq.
> Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
> 11921 Rockville Pike
> Rockville, M.D.  20852
> *Counsel for Plaintiffs Capitol Justice LLC and*
> *American Association for Justice*

Dated:  August 1, 2008

>    /s/ Reginald Goeke
> Reginald R. Goeke (D.C. Bar No. 453613)
> MAYER BROWN LLP
> 1909 K Street, N.W.
> Washington, DC  20006-1101
> Telephone:   (202) 263-3000
> *Attorney for Defendant Wachovia Bank, N.A.*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL JUSTICE LLC and AMERICAN ASSOCIATION FOR JUSTICE, <br><br> Plaintiffs, <br><br> v. <br><br> WACHOVIA BANK, N.A., <br><br> Defendant. | Civil Action No. 1:07-cv-02095-RCL |

## DECLARATION OF JOHN TINKEY

I, John Tinkey, am over 18 years of age, and state the following based on personal knowledge:

1.   Attached is a true and correct copy of an email that I sent to Jon Haber and John Gibb on December 3, 2007.

2.   Attached to that December 3, 2007 email is a true and correct copy of the statement that I attached and sent with that December 3, 2007 email.

I declare under penalty of perjury that the facts stated herein are true and correct.

Executed on July 31, 2008

By _____
        John Tinkey

## Tinkey, John

| | |
|---|---|
| **From:** | Tinkey, John |
| **Sent:** | Monday, December 03, 2007 9:54 AM |
| **To:** | 'Haber, Jon'; John Gibb |
| **Subject:** | FW: FW: AAJ/Forward Rate Lock Agreement |

**Attachments:** 777 6th Street Cost Breakdown.xls



777 6th Street Cost
Breakdown....
                    Dear Messrs. Haber and Gibb:

Since both the Loan Commitment Agreement and the Rate Lock Agreement have been terminated, Wachovia Bank, National Association ("Wachovia"), in accordance both agreements, shall refund to the Borrowers all deposits paid by AAJ or Capitol Justice, LLC in connection with said agreements, adjusted for any loss incurred in breaking the rate lock and any out-of-pocket expenses incurred by Wachovia in connection with the Loan to date.  An accounting of the net amount to be remitted to AAJ is provided in the attachment.  Wachovia fully reserves all of its rights and remedies under the Loan Commitment Agreement and the Rate Lock Agreement and at law.

Wiring instructions for delivery of the balance are:

Bank name: Bank of America

Account name: American Association for Justice Bank account # 002261160774 Routing # 026009593

John R. Tinkey
Managing Director
Wachovia Securities
Wachovia Capital Markets, LLC
301 South College Street, NC0166
Charlotte, NC 28288
Tel 704-715-9959
Fax 704-715-0066
Cell 704-906-0409
john.tinkey@wachovia.com

Atlanta Office Tel is 404-214-7223.

1

Loan Name:    **777 6th Street**
*Third Party Sheet*

| **Fees:** | **Bid** | **Firm** |
|---|---|---|
| Appraisal | $12,000 | **JJ Blake** |
| Environmental | | |
| Engineering | | |
| Seismic | | |
| Zoning | | |
| Site Inspection | | |
| Flood Cert | | |
| Tax Search | | |
| Credit Report | | |
| Appraisal Review | $1,400 | |
| Legal | $4,700 | **Cadwalder** |
| Hedge Breakage Loss | $10,005 | |

**Total:**    **$28,105**

| **Deposits:** | | |
|---|---|---|
| Rate Lock Deposit | $1,790,000 | 5/2/2007 |
| Good Faith Deposit | $20,000 | 5/18/2007 |

**Total:**    **$1,810,000**

**Balance:**    **$1,781,895**

| Loan Information | | Market Info at Lock | | Current market Info | | DV01 |
|---|---|---|---|---|---|---|
| Loan # | 502860854 | LEHM ERISA | 26.4 | LEHM ERISA | 95.4 | 503 |
| Name | 777 6th Street | LEHM Aaa | 41.5 | LEHM Aaa | 92.2 | 497 |
| Gross Coupon | 6.020 | BOA AAA | 27.76 | BOA AAA | 92.5 | 679 |
| Original Balance | 89,500,000 | LEHM Aaa 8.5+ | 30.7 | LEHM Aaa 8.5+ | 107.9 | 698 |
| Loan DV01 | 687.13 | Treasury Yield | 4.650 | Treasury Yield | 4.195 | |
| Loan 10y Equivs | 77,686,086 | Swap Spread | 54.00 | Swap Spread | 73.5 | |
| Rate Lock Date | 05/02/07 | Carry Cost | 1.625 | Treasury DV01 | 815.0 | |
| Pricing Term | 10 | Bps / Pt | 14.00 | Swap DV01 | 791.6 | |
| Rate Lock Date | 05/02/07 | | | | | |

| % Hedge | Hedge Product | WB Hedge Profit (Loss) |
|---|---|---|
| | UST Hedge P&L | (2,880,689) |
| 90% | Swap Hedge P&L | 1,079,299 |
| 30% | LEHM ERISA P&L | 744,165 |
| 20% | LEHM Aaa P&L | 360,185 |
| 35% | BOA AAA P&L | 1,099,617 |
| 7% | LEHM Aaa 8.5+ P&L | 269,589 |
| 92% | TRS Hedge P&L | 2,473,556 |
| | Total Hedge P&L | 672,166 |
| | Carry | (682,171) |
| | Grand Total | (10,005) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| CAPITOL JUSTICE LLC and AMERICAN ASSOCIATION FOR JUSTICE, |
| Plaintiffs, |
| v. |
| WACHOVIA BANK, N.A., |
| Defendant. |

Civil Action No. 1:07-cv-02095-RCL

**[PROPOSED] ORDER**

AND NOW, this ___ day of _____, 2008, upon consideration of Plaintiffs' Motion for Reconsideration of Dismissal of Count II of the Amended Complaint, the briefs in support of and opposition thereto, and the entire record herein, IT IS HEREBY

ORDERED that Plaintiffs' Motion for Reconsideration is DENIED, and IT IS HEREBY FURTHER

ORDERED that Count X (Accounting) of the Amended Complaint is hereby DISMISSED with prejudice.

SO ORDERED.

_____
ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE