IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL JUSTICE LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WACHOVIA BANK, N.A., <br><br> Defendant. | Civil Action No. 1:07-cv-02095-RCL |

**PLAINTIFFS' REPLY MEMORANDUM IN
FURTHER SUPPORT OF MOTION FOR RECONSIDERATION
OF DISMISSAL OF COUNT II OF THE AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Defendant Wachovia Bank opposes reconsideration of this Court's ruling after conceding that the "carry" charges at issue are really Transaction Costs, but asserting that they are nevertheless recoverable anyway—a position not only contradicted by the Agreement itself, but also Wachovia's earlier position that it did not charge AAJ with Transaction Costs. In seeking to recover carry charges in any event, Wachovia also relies on a bold and remarkable proposition at odds with fundamental contract law. In Wachovia's view, a lender may enter into a contract with a borrower, break the agreement with impunity, recover all its costs without a full accounting, and saddle the borrower with the full consequences of its misfeasance without any obligation to mitigate, based on an improper, literal reading of a "for any reason" provision.

Such a perverse result would violate the fundamental proposition that a party may not take advantage of its own wrong, or profit by its wrongful acts. It would also make an innocent party the insurer of the other party's purposeful breach—something the law cannot allow.

In its Motion, AAJ offers four reasons why the Court should reconsider its earlier ruling and reinstate claims relating to Wachovia's breach of the Rate Lock Agreement in Count II:

1. the express language of the Agreement did not permit Wachovia to saddle AAJ with $682,171 in "carry" charges, which are clearly not Breakage Costs;

2. because AAJ never assumed the risk of Wachovia's breach of the Loan Commitment Agreement, it is not responsible even for Breakage Costs, or any other costs flowing from Wachovia's wrongful refusal to fund and close the Loan;

3. the dismissal of Count II is inconsistent with the Court's rulings as to Count X (Accounting) and Count VII (Good Faith/Fair Dealing); and

4. the dismissal may prevent AAJ from recovering damages stemming from Wachovia's significant and unjustified delay in terminating the Rate Lock Agreement following its breach of the Loan Commitment Agreement.

In response, Wachovia fails to overcome these bases for reinstating Count II. In attempting to justify its deduction for "carry," Wachovia does not dispute that its carry charges relate to *maintaining*, not *breaking* the Hedging Arrangements. Wachovia thus concedes that the carry charges fit the Agreement's express definition of Transaction Costs, not Breakage Costs. Wachovia is reduced to arguing that either Breakage Costs somehow include Transaction Costs, or that it may recover Transaction Costs in addition to Breakage Costs here, despite its opposite position earlier. Both arguments, however, are directly contradicted by the express language of the Agreement.

Next, Wachovia contends that it may recover Breakage Costs even where, by its own wrongful acts, it incurred those costs by causing the Hedging Arrangements to be broken. This position is simply unsustainable under North Carolina law. As a matter of law, AAJ did not assume the risk of Wachovia's breach of the Loan Commitment Agreement, and did not agree to compensate Wachovia for expenses sustained as a result of its wrongful breach. Recognizing this truth, Wachovia obfuscates the issue by focusing narrowly on whether contracting parties assume a general risk of nonperformance by their counterparties, ignoring the important

distinction the law makes for nonperformance occasioned entirely by a party's wrongful breach of its contractual obligations. The latter does not provide a "reason" for Wachovia's recovery of Breakage Costs under the Agreement and applicable law.

Moreover, in attempting to deal with the impact of the Court's ruling on AAJ's viable claims relating to the insufficiency of Wachovia's Statement, Wachovia's bad faith and unfair dealing, and Wachovia's failure to mitigate damages, Wachovia ignores the allegations in the Amended Complaint, the Court's prior ruling, and the liberal pleading requirements of the Federal Rules of Civil Procedure. Giving proper effect to AAJ's allegations, the Court should reinstate Count II so that AAJ can pursue these claims.

Rather than offering compelling substantive responses on these issues, Wachovia devotes much of its brief to perceived procedural slights.[1] Even in this endeavor, Wachovia ignores the thrust of AAJ's instant Motion, which is quite clearly and narrowly directed to errors of apprehension regarding the express language of the Agreement and AAJ's claims in Count II.[2]

Ultimately, and perhaps in recognition of the difficulties in its position, Wachovia attempts to minimize AAJ's Motion by misleadingly suggesting it involves merely a $10,005 deduction, when in fact the amount at stake is at least $682,171—a considerable sum, the recovery of which should not be hastily denied to a truly innocent victim here. At this early stage of the litigation, which is barely a month into discovery and will continue regardless of the Court's ruling on this Motion, there is little to be gained and no real prejudice to Wachovia, but much to be lost in terms of judicial efficiency and AAJ's ability to vindicate its rights, by the

---

[1] For example, Wachovia complains that AAJ failed to comply with the "meet and confer" requirements of Local Rule 7(m), ignoring not only the fact that Rule 7(m) applies to non-dispositive motions, but also the utter futility of such an effort, as now demonstrated by Wachovia's clear opposition to AAJ's requested relief.

[2] While AAJ disagrees with the Court's dismissal of AAJ's other claims as well, AAJ limited its request for reconsideration to only the claims in Count II. Rule 54(b) provides, in pertinent part, that "any order … that adjudicates fewer than all the claims … does not end the action as to any of the claims … and may be revised at any time before entry of a judgment."

3

Court's summary refusal to allow AAJ to pursue its claims for recovery in Count II. Those claims should be reinstated.

## ARGUMENT

### I. WACHOVIA DOES NOT DISPUTE THAT THE CARRY CHARGES ARE TRANSACTION COSTS, WHICH ARE NOT RECOVERABLE HERE

In its Opposition, Wachovia does not dispute that the carry charges at issue are the costs associated with maintaining the Hedging Arrangements in the Agreement. (*See* AAJ Mem. at 6.) Likewise, Wachovia does not dispute that its own Statement confirms this, by referencing the "Carry Cost" rate of 1.625 to be applied "*at Lock*."[3] (Emphasis added.) According to the Form of Confirmation attached to the Agreement, the "Lock Date" was April 2, 2007.

Wachovia thus effectively concedes that these "carry" charges were Transaction Costs, which are defined as "costs and expenses associated with and incurred by Wachovia in *entering* into and *maintaining* the Hedging Arrangements." (RLA § 4(a) (emphasis added).) In asserting its entitlement nevertheless to recover these carry charges as Breakage Costs, Wachovia argues that either Breakage Costs include Transaction Costs, or that, in addition to Breakage Costs, Wachovia may also recover Transaction Costs here.

Both of these arguments fail under the clear language of the Agreement.

#### A. Breakage Costs Do Not Include Transaction Costs

As previously noted, the Agreement—in no less than three places—treats Breakage Costs and Transactions Costs as mutually exclusive. (AAJ Mem. at 6 n.7 (referencing §§ 2(b), 4(b) & 8).) For example, section 2(b) provides that, in certain circumstances, Wachovia must unwind

---

[3] The copy of the Statement that Wachovia attaches to its brief was originally a two-page document that it has now reduced to one page. While Wachovia is correct that the first page (the top portion of the exhibit to Wachovia's Tinkey declaration) does reference "Hedge Breakage *Loss*" (emphasis added), AAJ's argument about the Statement in its opening brief was focused on the second page (the box at the bottom of Wachovia's exhibit) in which there is no reference to "Breakage" at all.

Hedging Arrangements and "return the Mandatory Lock Fee less any (X) Transaction Costs (as hereinafter defined), (Y) Breakage Costs, and (Z) fees and expenses (including attorneys' fees) incurred by Wachovia in connection with the Loan (collectively, '**Wachovia Expenses**')." If Breakage Costs included Transaction Costs, this formula and the similar ones in sections 4(b) and 8, would permit a double recovery by Wachovia. *See Bentley Funding Group v. SK & R Group,* 609 S.E.2d 49, 56 (Va. 2005) (reversing trial court interpretation of defined term of contract to include items that parties had not expressly included in definition); *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970) (noting "all clauses of [the contract] are to be construed, if possible, so as to bring them into harmony"); *Remy Amerique v. Touzet Distrib.,* 816 F Supp 213, 217 (S.D.N.Y. 1993) (recognizing "sound principle of construction to interpret a contract so that all its provisions dwell in harmony with each other"). There is no reason to believe the parties intended that result. *See Kirk v. Nationwide Mut. Ins. Co.*, 119 S.E.2d 645, 648 (N.C. 1961) (recognizing well-accepted rule that expressly defined terms are to be "accepted and applied").

Similarly, if Breakage Costs included Transaction Costs, listing them both as recoverable in section 2(b) would be superfluous; section 2(b) would have simply said that Wachovia could have deducted Breakage Costs. The same is true for sections 4(b) and 8. *See Rosi v. McCoy*, 356 S.E.2d 568, 571 (N.C. 1987); *International Paper Co v. Corporex Constrs.,* 385 S.E.2d 553, 556 (N.C. Ct. App. 1989) ("This Court has long acknowledged that an interpretation which gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous.").

The reason both Breakage Costs and Transaction Costs are listed in sections 2(b), 4(b) and 8 is because they are wholly different categories of costs. Wachovia fails to prove otherwise

5

in its opposition papers.[4]

In addition, in contending that the first sentence in section 3 could permit the recovery of Transaction Costs (*i.e.,* costs associated with and incurred in entering into and maintaining the Hedging Arrangements), Wachovia ignores (as did the Court) the conditional structure of that lengthy provision defining Breakage Costs.  A careful reading, however, demonstrates that Breakage Costs, as they are defined, are costs incurred "***[i]n the event*** that … the Loan … shall not be closed and funded." (Emphasis added.)  Section 3 says that, in such an event, Wachovia "may suffer or incur" Breakage Costs.  Thus, Breakage Costs, as their name indicates, derive entirely from a Loan not closing and funding, and Wachovia's need to *break* the Hedging Arrangements.[5]  When a Loan closes and funds as planned, there are no Breakage Costs; but, there are carry costs, which do not derive from the Loan not closing and funding and Wachovia's need to break Hedging Arrangements.[6]

Thus, to the extent carry charges could be recoverable at all in these circumstances, they would have to be recoverable as Transaction Costs.

### B. The Agreement Does Not Permit Wachovia to Recover Transaction Costs

Nowhere does the Agreement permit Wachovia to recover Transaction Costs when the Loan does not close and fund as a result of Wachovia's termination (wrongful or otherwise) of

---

[4] While Wachovia may be correct in footnote 7 of its brief that the Agreement defines "Wachovia Expenses" to include both Breakage Costs and Transaction Costs (*i.e.,* Wachovia Expenses = Breakage Costs + Transaction Costs (+ "fees and expenses (including attorney's fees) incurred by Wachovia in connection with the Loan")), that hardly suggests that there is overlap between Breakage Costs and Transaction Costs.  Indeed, it confirms the opposite—that they are distinct and separate.  Wachovia fails to offer any reason for believing, based on the language of the Agreement, that there is any overlap between Breakage Costs and Transaction Costs.

[5] The other circumstances referenced in section 3 in which Breakage Costs could arise similarly involve situations in which Wachovia must break Hedging Arrangements because of changes in material loan terms (*e.g.,* maturity date, loan amount) that impact the effectiveness of the Hedging Arrangements.

[6] Wachovia's contention that AAJ's challenge to whether Wachovia incurred Breakage Costs in the form of carry charges "does not withstand *factual* scrutiny" (Opp. at 2 (emphasis added)) simply reinforces the need for discovery into the facts of what these costs actually involved, and why it is premature to dismiss AAJ's claim now when the only "facts" that are supposed to be considered are the allegations in the Amended Complaint.

the Loan Commitment Agreement in these circumstances. Indeed, in its original Motion, Wachovia asserts "there was never any deduction for any 'Transaction Costs.'" (Defs. Mot. [21] at 27.)

Section 3, which Wachovia relies upon in attempting to saddle AAJ with the carry charges, provides for recovery of (at most) only Breakage Costs in these circumstances. Had the parties intended to let Wachovia recover Transaction Costs in these circumstances, they could have provided explicitly for recovery of *both* Breakage Costs and Transaction Costs, as they did in three other places in the Agreement—sections 2(b), 4(b) and 8. *Bentley Funding Group,* 609 S.E.2d at 56 (holding that "under the principle of *expressio unius est exclusio alterius,* the omission of a particular covenant or term from a contract reduced to writing shows an intent to exclude it").

In addition, Wachovia concedes in footnote 6 of its brief that section 4 does not provide a basis for recovery of Transaction Costs here.[7] Wachovia cites no other portion of the Agreement that would permit its recovery of Transaction Costs in these circumstances. Indeed, none exists.

Nevertheless, Wachovia argues, without any reference to the actual language of the Agreement that it drafted, that AAJ has not offered any reason why Wachovia would have agreed to an arrangement under which the costs of the Hedging Arrangements would be imposed upon Wachovia here. (Opp. at 6-7.) Leaving aside the question of *why* Wachovia would have agreed to such an arrangement, the clear language of the Agreement confirms that it *did* agree to such an arrangement. Indeed, section 4 of the Form of Confirmation, which is attached to the Agreement as page 6, states, "For the initial 228 day period for which the loan *is locked but not funded*, Borrower shall pay to Wachovia a Transaction Costs Fee in the amount of $0.00."

---

[7] As Wachovia acknowledges, "Section 4 *says nothing* about whether Wachovia can recover Transaction Costs, or any other costs, in the event the Loan is not closed and funded." (Opp. Br. at 7 n.6 (emphasis added).)

7

(Emphasis added.)  Thus, the parties explicitly agreed that Wachovia would be responsible for Transaction Costs during the time when the Loan was *locked but not funded*—that is, the entire period that the Rate Lock Agreement was in effect here.[8]

While Wachovia suggests that it does not make sense that AAJ would receive the profits from the Hedging Transaction while "imposing on Wachovia" certain costs (Opp. at 6), the reality, as shown on Wachovia's Statement, is that the $672,166 that AAJ received from the Hedging Arrangements (performed with almost $2 million of AAJ's money) was only the *net* profit from the Hedging Arrangements.  According to the Statement, the Hedging Arrangements produced more than $3.5 million in profits that were offset by more than $2.8 million in losses.  Thus, AAJ's receipt of $672,166 in net profits occurs only after Wachovia recoups and AAJ's bears almost $3 million in losses.[9]

Under the clear language of the Agreement, AAJ was not responsible for carry charges or any other Transaction Costs in these circumstances.  Wachovia's withholding of $682,171 from AAJ represents a breach of the Agreement by Wachovia.  Moreover, in the face of Wachovia's breach of the Loan Commitment Agreement and refusal to fund and close the Loan upon the terms and at the interest rate agreed to by the parties, this result makes perfect sense.

## II. AAJ DID NOT ASSUME THE RISK OF WACHOVIA'S BREACH OF THE LOAN COMMITMENT, AND DID NOT AGREE TO COMPENSATE WACHOVIA FOR EXPENSES SUSTAINED AS A RESULT

As discussed in AAJ's opening brief, it cannot be the case that, in agreeing to be

---

[8] In accepting Wachovia's earlier argument, that the parties' agreement in section 4 that Transaction Costs would be borne entirely by Wachovia applied only if the Loan funded and closed, the Court appears to have mistakenly overlooked this language in the Form of Confirmation setting Transaction Costs at zero during the period when the Loan is "locked but not funded."  At the time that Wachovia terminated the Agreement, the Loan was "locked but not funded."  As noted in AAJ opening brief (AAJ Mem. at 8-9), the Court also inconsistently applied the provision in section 4 relating to the Transaction Cost Fee.  Wachovia fails to credibly explain this inconsistency.

[9] In a sense, the $672,166 in net profits are *negative* Breakage Costs—that is, negative losses sustained as a result of the Loan not closing and Wachovia having to break the Hedging Arrangements.

responsible for Breakage Costs in the event that the Loan did not fund and close "for any reason," AAJ agreed to this obligation in circumstances in which the sole reason the Loan did not close and fund was Wachovia's outright breach of the Loan Commitment Agreement.[10]  Yet, that is precisely the impact of Wachovia's position that it was entitled to charge AAJ with Breakage Costs (and now, it contends, even Transaction Costs) here.

At this stage, Wachovia's position reduces to the following:

- Wachovia breached the Loan Commitment Agreement by refusing, without a legal or contractual basis, to make the Loan to AAJ to which it committed;

- AAJ now needs to compensate Wachovia for costs associated with breaking the Hedging Arrangements;

- the only reason Wachovia needed to break the Hedging Arrangements (and for its unilateral termination of the Rate Lock Agreement) was its failure to honor its commitment to make the Loan to AAJ; and

- AAJ is also now responsible for Transaction Costs, which Wachovia admits AAJ would not have had to pay under section 4 of the Agreement had Wachovia not breached its loan commitment to AAJ in the first place.

Rather than offer any legal authority or other explanation as to why the law would permit such an utterly perverse result, Wachovia ignores the assumed facts and instead offers a series of "straw man" arguments that bear no relationship to the circumstances alleged.[11]  It attempts to pigeon-hole AAJ's position into the "prevention doctrine," and then proceeds to argue why that doctrine is "inapplicable."  Neither of Wachovia's arguments, however, is correct.

---

[10] At this stage of the proceedings, the Court must accept as true AAJ's allegations in paragraphs 102-12 of its Amended Complaint that Wachovia failed to honor its commitment to fund the Loan to AAJ by wrongly invoking the material adverse change ("MAC") provision in the Loan Commitment Agreement.  (*See* Mem. Op. [30] at 5.)

[11] As a preliminary matter, Wachovia's contention, that AAJ has waived what it mischaracterizes as "the prevention doctrine" argument by not raising it earlier (Opp. at 9), is incorrect and also fails to account for the context in which this issue arose—the Court's conclusion that the $682,171 carry charges were Breakage Costs based on a misreading of the clear language of the Agreement, coupled with Wachovia's flip-flop regarding its right to recover Transaction Costs (first it admitted, in its motion to dismiss, that it did not charge them, but now it contends that it did).  Had this not occurred, there would have been no need to reach this issue.  Moreover, AAJ alleged in paragraph 118 of the Amended Complaint that the Agreement "provides no basis, under the circumstances presented, for deducting 'carry' charges."

While Wachovia claims that AAJ assumed the risk of Wachovia's non-performance (*i.e.,* not funding the Loan), all of its examples involve circumstances in which Wachovia had the contractual right not to fund the Loan, such as for AAJ's failure to execute loan documents or Wachovia's *legitimate* invocation of a MAC clause. (Opp. at 11 n.8.) These examples are inapposite to the *illegitimate* invocation of the MAC clause here, resulting in a breach.

To be sure, AAJ accepted a certain level of risk that the Loan would not close or be funded—but not on account of Wachovia's breach. None of the cases cited by Wachovia support such a ridiculous view.[12] Indeed, in *District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1023 (D.C. Cir. 1985), cited by Wachovia, the court noted that conduct that "intentionally frustrated" or "sabotaged" a contract would not be encompassed by language that excused performance "for any reason."

Nowhere in its opposition does Wachovia dispute the fundamental proposition that "[a] party to a contract may not rely on its own unlawful conduct as a predicate for burdening or charging the other party with some obligation under the contract." (Pls. Mem. at 11 (citing North Carolina authority).) Likewise, it does not dispute that "parties may not 'take advantage of their own wrong'" or "profit by their wrongful acts." (Pls. Mem. at 11 (citing *Harwood v.*

---

[12] In *W&G Seaford Assocs., v. Eastern Shore Mkts.*, 714 F. Supp. 1336 (D. Del. 1989), the court merely recites the general proposition that the "prevention doctrine does not apply where, *under the contract*, one party assumes the risk that fulfillment of the condition precedent will be prevented." (Emphasis added.) It did not rule, as a general principle of contract construction as Wachovia suggests, that one of the risks all parties to contracts assume is that the other party will breach or will otherwise act illegally. Were it otherwise, that would mean the end to the concept of contracts that bind. The court also held that whether any particular risk had been assumed was to be determined from the contract itself, noting the contract "did not authorize a party to prevent the conditions from occurring." *Id.* at 1342. Likewise, the court in *A.I.C. Ltd. v. Mapco Petroleum Inc.*, notes that "[a]n exception to [the prevention doctrine] must be made where the hindrance is due to some action of the promisor which *under the terms of the contract*…he was permitted to take." 711 F. Supp. 1230, 1238 (D. Del.) (citing 5 S. Williston, *A Treatise on the Law of Contracts* §677A, at 235) (emphasis added), *aff'd*, 888 F.2d 1378 (3d Cir. 1989). In *A.I.C.,* the parties, through "unambiguous and painstakingly crafted language," had provided that one party had no duty to enter into certain transactions. Nothing in the Loan Commitment Agreement permits Wachovia to refuse to fund the Loan in the absence of any material adverse change, as AAJ has alleged here. Finally, in *Robert L. Ferman & Co. v. General Magnaplate Corp.*, 33 F.R.D. 326, 329 (D.N.J. 1963), the court notes only the inapposite situation that a party may not sue for breach where it assumed the risk that the other side's performance would become impossible.

*Shoe,* 53 S.E. 616 (1906).) It similarly fails to even attempt to explain why the cases cited by AAJ in support of this fundamental proposition are not applicable.

Instead, it simply argues that the "prevention doctrine" does not apply because "there is no performance to excuse nor any condition precedent that was not performed." (Opp. at 11.) Even this is incorrect. In making this assertion, Wachovia ignores the actual funding and closing of the Loan, which Wachovia prevented from occurring by its wrongful breach of the Loan Commitment Agreement. It is that wrongful act by Wachovia, in excess of its legal rights, that gives rise to its claim for Breakage (and now Transaction) Costs, and that therefore precludes Wachovia from passing these costs on to AAJ here. *Propst Constr. Co. v. Dep't of Transp.,* 290 S.E.2d 387, 388 (N.C. App. 1982) (holding party who prevented performance by "wrongful" conduct "in excess of his legal rights" "will not be permitted to take advantage of the nonperformance").

Wachovia may not take advantage of its own wrong—its breach of the Loan Commitment Agreement—as a "reason" for seeking recovery of Breakage Costs (or Transaction Costs) from AAJ. *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 96-97 (1954) (affirming trial court finding that "for any reason" in lease not read literally to include reasons that are wrongful or beyond party's legal or contractual rights).

### III. WACHOVIA FAILS IN ITS ATTEMPT TO EXPLAIN AWAY THE INCONSISTENCY BETWEEN THE COURT'S DISMISSAL OF COUNT II AND OTHER PARTS OF ITS DECISION

In suggesting that there is no inconsistency between the Court's dismissal of Count II and refusal to dismiss Count X (Accounting), Wachovia contends that AAJ never challenged the sufficiency of the Statement in its Amended Complaint. In doing so, Wachovia ignores

paragraphs 95, 96 and 101,[13] attacking Wachovia's "highly-opaque 'accounting'" and refusal "to provide the true accounting of its hedging transactions," and demanding that Wachovia "provide a complete accounting of how AAJ's deposits were handled during the applicable time period along with what profits were realized at each point during the time period."[14]

Next, Wachovia asserts that the Court was applying "a very different standard" in refusing to dismiss Count X while, at the same, dismissing Count II for Wachovia's failure to provide a sufficient Statement, compiled in good faith, as required by section 3 of the Agreement. However, the Court's decision turned on its finding that the term "statement" in section 3 was ambiguous, leaving the ultimate determination as to whether the Statement was sufficient "a question for the finder of fact" (Mem. Op. at 18 (quoting *Sobelsohn v. Am. Rental Mgmt.,* 926 A.2d 713, 718 (D.C. 2007)), and therefore making it inappropriate for determination at this stage as to whether Wachovia's "skeletal summary of the disposition of plaintiffs' deposit" was sufficient.[15] (*Id.* at 19.) Indeed, in refusing to dismiss Count X, the Court noted that, while "plaintiffs will not ultimately be entitled to recover on both accounting and breach of contract theories," "dismissal of these inconsistent claims is *unwarranted at this point.*" (*Id.* at 18 (emphasis added).) Nevertheless, it then dismissed AAJ's breach of contract claim in Count II anyway.

As for the Count VII claim relating to bad faith and unfair dealing, Wachovia once again attempts to argue against the existence of an independent cause of action based on this theory, an

---

[13] Paragraph 113 of the Amended Complaint explicitly incorporates these allegations into Count II.

[14] To the extent the Court believes that these allegations are insufficiently specific under the general notice pleading requirements of Rule 8, AAJ requests leave to flesh out these allegations.

[15] The copy of the Statement attached to Wachovia's opposition illustrates the highly opaque, cryptic and insufficient nature of the bare-bones Statement that Wachovia provided, in breach of the requirements of section 3. In light of this and for the reasons given in its Memorandum Opinion, the Court should decline Wachovia's invitation to revisit its ruling as to AAJ's claim in Count X.

argument the Court expressly rejected. (*Id.* at 14 (holding that "D.C. courts recognize a cause of action for breach of the duty of good faith and fair dealing").) The Court's rationale for dismissing AAJ's claims in Count VII was based on its understanding that "they are patently identical to established causes of action." (*Id.* at 15.) While this may be the case as to AAJ's claims of bad faith and unfair dealing relating to Wachovia's breach of the Loan Commitment Agreement in Count I, which remains a part of this litigation, unless the Court now allows AAJ to pursue its claims in Count II, AAJ may be unable to pursue that portion of Count VII relating to Wachovia's bad faith and unfair dealing in relation to the Rate Lock Agreement. Moreover, this case is distinguishable from *Washington Metropolitan Area Transit Authority v. Quik Serve Foods,* No. 04-838(RCL), 2006 WL 1147933, at *5 (D.D.C. April 28, 2006), in which the Court found that the defendant's actions "did not rise to the level of bad faith" because they were expressly permitted by the parties' lease. No such finding has been made or could be made at this stage of the proceedings with respect to Wachovia's actions toward AAJ.

IV. **WACHOVIA FAILS TO JUSTIFY DISMISSAL OF AAJ'S MITIGATION CLAIM IN COUNT II AT THIS EARLY JUNCTURE**

In arguing principally that AAJ did not allege sufficient facts concerning Wachovia's failure to mitigate damages by its delay of at least 25 days in terminating the Rate Lock Agreement following its termination of the Loan Commitment Agreement, Wachovia ignores the allegations in paragraph 92 of the Amended Complaint, cited in AAJ's opening brief and incorporated into Count II in paragraph 113, concerning the "impact that delay may have had on the funds at issue." Wachovia similarly ignores paragraph 124, which states "Wachovia's breach of the Rate Lock Agreement gives rise to AAJ's right to pursue all appropriate contractual remedies and relief." In this case, AAJ is seeking recovery for the damages it sustained as a result of Wachovia's unjustified delay between the termination of the two agreements.

Next, Wachovia contends, in effect, that it is simply implausible that the "carry" Wachovia charged AAJ would have been any less or that the net profits realized on the Hedging Arrangements would have been any greater had Wachovia terminated the Agreement earlier. However, only discovery will fully reveal whether that is in fact the case, or whether AAJ's position would have been better had Wachovia not delayed its termination of the Agreement. At this stage of the proceedings, AAJ should be given the benefit of the doubt and all reasonable inferences. *See Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

In any event, AAJ's preliminary investigation has revealed that its position likely would have been better had Wachovia terminated earlier. Among other things, it is AAJ's understanding that the $682,171 in "carry" that Wachovia has attempted to impose upon AAJ may derive from a formula, an element of which is the number of days that the rate lock is in effect. Thus, had Wachovia terminated the Agreement earlier, the multiple for number of days would have been smaller. At this stage, given the lack of detail provided in Wachovia's Statement and without the benefit of discovery, it is simply unreasonable and unnecessary for AAJ to have to state this claim with any greater detail. However, to the extent the Court believes more detail is required, AAJ respectfully requests the opportunity to amend.

Finally, Wachovia contends that *AAJ* should have terminated the Rate Lock Agreement earlier, in spite of the fact that AAJ, at the time, had rejected Wachovia's refusal to honor its loan commitment, and was insisting that Wachovia fund and close the Loan. However, AAJ simply refused to engage in Wachovia's game of "chicken" to see if AAJ would terminate the Rate Lock Agreement and provide Wachovia with another argument for claiming it no longer had to fund the Loan on the previously agreed-upon terms. Wachovia had no reason for delaying its termination of the Rate Lock Agreement, particularly if it had no intention of making the Loan.

As the party refusing to perform its obligations under the two agreements, Wachovia had an obligation to timely terminate the Rate Lock Agreement to minimize further harm. *Tillis v. Calvin Cotton Mills,* 111 S.E.2d 606, 613 (N.C. 1959).

## CONCLUSION

For these reasons as well as the reasons provided in its opening Memorandum, AAJ respectfully requests that the Court reconsider its decision and reinstate the claims for breach of the Rate Lock Agreement in Count II of the Amended Complaint.

Dated:  August 13, 2008                                   Respectfully submitted,

                                                        _____*s/David S. Wachen*_____
                                                        Jeremy W. Schulman (D.C. Bar No. 481755)
                                                        David S. Wachen (D.C. Bar No. 441836)
                                                        SHULMAN, ROGERS, GANDAL,
                                                         PORDY & ECKER, P.A.
                                                        11921 Rockville Pike
                                                        Rockville, MD 20852
                                                        Telephone:    (301) 230-5200
                                                        Facsimile:    (301) 230-2891

                                                        *Attorneys for Plaintiffs Capitol Justice LLC and American Association for Justice*