UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITOL JUSTICE LLC, *et al.*,

    Plaintiffs,

v.

WACHOVIA BANK, N.A.,

    Defendant.

Civil Action No. 07-2095 (RCL)

## MEMORANDUM OPINION

This matter comes before the Court on Wachovia's Motion [82] to Exclude the Expert Report and Testimony of Gregory H. Leisch. Wachovia puts forth two arguments to exclude Leisch's report. First, Wachovia contends that Leisch's expert report should be excluded under the Federal Rules of Civil Procedure because the report is untimely and fails to qualify as a supplemental report. Second, even if the report is admissible under the Federal Rules of Civil Procedure, Wachovia argues that Leisch's report is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). For the reasons set forth below, the Court rejects Wachovia's arguments. Accordingly, the motion shall be denied.

I.    **BACKGROUND**

A.    **Transaction**

This is a breach of contract case brought by the American Association for Justice ("AAJ") against Wachovia Bank, N.A. ("Wachovia"). In June 2007, AAJ entered into a loan commitment agreement ("LCA") with Wachovia in which Wachovia agreed to provide financing for AAJ's purchase of 777 6th Street, N.W., Washington, D.C. The LCA contained a material adverse

change ("MAC") clause, which provided that "Lender may, at its option, terminate its agreement to make the Loan . . . in the event of any material adverse change in the financial, banking or capital market conditions that could impair the sale of the Loan by Lender as contemplated in the Term Sheet." (Pl.'s Ex. 33.)[1] Wachovia invoked the MAC clause to terminate the LCA on October 22, 2007 because the "fixed income sector of the capital markets" had undergone "a material and adverse change." (Pl.'s Ex. 36.)

Without the Wachovia loan, AAJ had to find alternative financing to purchase the building, or risk losing its $5 million deposit. After soliciting alternative financing options, AAJ purchased the building through a complex structure with the Multi-Employer Property Trust ("MEPT"). (Pls.' Ex. 74.) ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████

On November 14, 2007, AAJ filed a complaint against Wachovia alleging, *inter alia*, that Wachovia breached its contract to provide financing. AAJ contends that it has suffered monetary damages as a result of the breach and its subsequent deal with MEPT. In a motion for summary judgment, Wachovia argues that AAJ has not suffered any damages as a result of the alleged breach. Before the Court can rule on that motion, however, it must first decide Wachovia's motion to exclude the expert report and testimony of AAJ's damages expert, Gregory Leisch.

**B.     Leisch's Damage Report**

---

[1] All citations to exhibits relate to the exhibits that the parties filed with respect to Wachovia's motion for summary judgment.

Gregory Leisch is the CEO of Delta Associates, a commercial real estate consulting company located in the Washington, D.C. metropolitan area. (Pls.' Ex. 79.) He has over 30 years of experience in commercial real estate and has advised investors for the past 28 years on expected future returns from real estate over time through the use of complex econometric models. (*Id.*) In addition, he is a frequent lecturer on real estate development opportunities and has authored numerous articles on books on real estate. (*Id.*)

On February 6, 2009, Leisch submitted his initial report, which he amended on March 16, 2009. (Pls.' Ex. 79A.) The initial report, as amended, estimated that AAJ suffered over ███ ███ in damages. (Mem. at 6.) On March 18, 2009, Wachovia deposed Leisch and challenged his calculation of AAJ's equity loss in the building and AAJ's loss in tribute rights donations. (Opp'n at 10.)

On March 23, 2009, AAJ informed Wachovia that Leisch was revising his calculations and would submit a revised report. (Pls.' Ex. 132.) AAJ would make Leisch available to Wachovia for deposition on the revised report and would extend the date for any rebuttal report to Leisch for a reasonable time after the second deposition. (*Id.*) Wachovia agreed to AAJ's request, but reserved the right to challenge the timeliness of Leisch's new report. (Mem. at 8.)

On April 13, 2009, Leisch submitted his revised report. AAJ provided Wachovia with a redline comparing Leisch's initial and revised reports and a transmittal letter from Leisch explaining the changes. (Pls.' Ex. 135.) Leisch used the same five-part structure, which computes AAJ's damages with respect to equity value, parking, occupancy costs, tribute rights, and the rate lock fee, in his initial and revised reports. In the revised report, he made changes only to the inputs and calculations within the damage model in order "to produce a more

3

complete and accurate report." (Opp'n at 11.) As a result of these changes, Leisch estimates that AAJ suffered ▮▮▮ in damages—a nearly ▮▮▮ adjustment in Wachovia's favor. (*Id.*)

On April 30, 2009, Wachovia deposed Leisch on his revised report. (*Id.* at 12.) Wachovia then submitted the rebuttal report of its expert, James Walsh, on May 22, 2009. (*Id.*) Walsh's report criticizes Leisch's initial and revised reports.

## II. DISCUSSION

Wachovia argues that Leisch's expert report should be excluded for two reasons: (a) the revised report is inadmissible under the Federal Rules of Civil Procedure; and (b) the report is inadmissable under *Daubert*. The Court disagrees and will deny Wachovia's motion.

### A. Leisch's Revised Report Is Admissible Under the Federal Rules of Civil Procedure

Wachovia contends that Leisch's revised report is an improper supplementation under Rule 26(e). As a result, Wachovia asserts that the revised report is untimely and should be excluded under Rule 37(c). The Court is not persuaded by these contentions and finds that the revised report is a proper supplementation and is therefore timely. The Court also finds that even if the report is not a proper supplementation, its untimely submission is harmless and exclusion is not appropriate.

#### 1. The Revised Report Qualifies as a Supplemental Report Under Rule 26(e)

A party must supplement an expert report when required by Federal Rule of Civil Procedure 26(e). FED. R. CIV. P. 26(a)(2)(B). Rule 26(e)(1) states that a party must supplement a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." With respect to experts, "the party's duty to supplement

4

extends both to information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). In addition, "additions or changes . . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.*

Furthermore, the Rule anticipates that in complex litigation an expert witness may "refine . . . his or her opinion as he or she prepares for trial." *Nnadili v. Chevron, U.S.A., Inc.*, Civ. No. 02-1620, 2005 WL 6271043, at *1 (D.D.C. Aug. 11, 2005). Thus, the Court's central inquiry is "whether [a party's] supplemental report comes so late in the game that [the opposing party] has no meaningful opportunity to respond or prepare for deposition or trial." *Id.* Rule 26(e), however, does not grant a party the right to supplementation when the party's motive is to "wholly 'rework [a] damages claim' or 'change the substance of their contentions.'" *Bell v. Gonzales*, Civ. No. 03-163, 2005 WL 3555490, at *16 (quoting *DAG Enterprises, Inc. v. Exxon Mobil Corp*, 226 F.R.D. 95, 110 (D.D.C. 2005)).

The Court finds that Leisch's revised report is a proper supplementation under Rule 26(e). Leisch did not wholly rework his damages claim. He used the same methodology in his revised report as in his initial report. He only changed the inputs and calculations to produce a more complete and accurate report. (Pls.' Ex. 85) Furthermore, Wachovia had the opportunity to depose Leisch on his supplemental report and submit a rebuttal report. *See Nnadili* Civ. No. 02-1620, 2005 WL 6271043, at *1 (stating that a supplemental report should come in if the opposing party is able prepare for t rial). Indeed, during his deposition, Leisch stated that his initial report was incomplete (Def.'s Ex. 22), and thus demonstrated that supplementation was proper. In addition, the supplementation is timely because it occurred before the date of Rule 26(a)(3) pretrial disclosures, which has not yet been set.

Wachovia also contends that Leisch's supplemental report is not a mere correction of his initial report because a correction would have ███████████████. This argument, however, is not relevant to the question of whether Leisch's revised report was a proper supplementation of his initial report. Indeed, the Court does not weigh an expert's conclusions when determining whether an expert report is admissible. *See Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996)

In addition, Wachovia argues that the revised report is not a supplementation because the initial report would have failed a *Daubert* challenge. *See Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003) (stating that if an initial expert report fails a *Daubert* test, the party is not entitled to a do over). Wachovia, however, did not file a *Daubert* challenge to the first report. Rather, it asserts that Leisch's initial report would not have survived a Daubert motion because the damage estimate of ███████████ demonstrates that the report contained "egregious flaws." With nothing more than speculation that the initial report would have failed a *Daubert* challenge, the Court will not reject Leisch's revised report as an improper supplementation of a failed report.

Accordingly, the Court concludes that Leisch's revised reports qualifies as a proper supplementation under Rule 26(e). Leisch made corrections to provide a more correct and complete report, and Wachovia has had ample opportunity to prepare for trial. *See Nnadili* Civ. No. 02-1620, 2005 WL 6271043, at *1.

2.   **The Revised Report Is Not Excludable Under Rule 37(c)**

Because the Court finds that Leisch's revised report is a proper supplementation, Wachovia's argument that the report must be excluded as untimely under Rule 37(c) fails. In

6

addition, even if the report were not proper supplementation, the report would not be excluded under Rule 37(c) because the untimely submission of the revised report is harmless. *See* FED. R. CIV. P. 37(c) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). As discussed above, Wachovia had the opportunity to depose Leisch on his revised report and there was no disruption in the trial schedule. *See DAG Enterprises, Inc. v. ExxonMobil Corp.*, No. 00-182, 2007 WL 4294317, at *1 (D.D.C. Mar. 30, 2007) (admitting an untimely expert report where the opposing party had the opportunity to depose the expert, the trial had not yet been scheduled, and where exclusion would be "too extreme" of a remedy).

### B. Leisch's Revised Report Is Admissible Under *Daubert*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. A party seeking to present the expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Miller v. Holzmann*, 563 F. Supp. 2d 54, 89 (D.D.C. 2008) (citing *Daubert*, 509 U.S. at 592 & n.10). Specifically, the party must convince the Court that the expert is qualified "by knowledge, skill, experience, training, or education," and that his or her testimony will be "helpful to the trier of fact" and is "'the product of reliable principles and methods,' applied 'reliably to the fact of the case.'" *Id.* (quoting FED. R. EVID. 702).

In determining whether the testimony meets the requirements of Rule 702, the Court undertakes the role of a gatekeeper. *See Ambrosini*, 101 F.3d at 133 (citing *Daubert*, 509 U.S. at 592-93). In performing this role, the Court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology

properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The Court must focus on the methodology employed by the expert, not his or her conclusions. *See Ambrosini v. Labarraque*, 101 F.3d at 133. Thus, as gatekeeper, the Court ensures the "reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Wachovia argues that Leisch's supplemental report is inadmissible under *Daubert* and Rule 702 because (1) Leisch is not qualified to testify as an expert; (2) Leisch's "equity value" calculation is unreliable; (3) Leisch's "tribute rights" assessment is unreliable; and (4) Leisch's opinion will not be helpful to the jury. The Court disagrees. In performing its gatekeeper function, the Court finds that is admissible because Leisch is qualified, his equity value calculation is reliable, his tribute rights estimate is reliable, and his opinion will be helpful to the jury.

### 1. Leisch Is Qualified to Testify as an Expert

An expert may be qualified "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Wachovia argues that Leisch is not qualified to testify as an expert because he is not a qualified real estate appraiser. Wachovia, however, is unable to provide any controlling case law for that proposition and relies heavily upon *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036 (5th Cir. 1998). In *Hidden Oaks*, the court noted that one factor the district court considered in excluding the expert's testimony was that he was not a licensed appraiser. *Id.* at 1350. The district court, however, did not rely solely on that factor and considered the expert's lack of knowledge of appraisal theory and his minimal contacts with Austin. *Id.* Indeed, the court acknowledged that courts also must consider the expert's "knowledge of the property and of the real estate market in which it is situated." *Id.* (quoting

*United States v. 60.14 Acres of Land*, 362 F.2d 660, 668 (3d Cir. 1966)).

Here, the fact that Leisch is not a qualified appraiser does not prevent him from testifying as an expert. Leisch has 30 years of experience in commercial real estate and has advised investors on the expected future returns from real estate for the past 28 years. In calculating AAJ's damages, he used the appraisals done by Wachovia and MEPT in addition to his independent analysis. Furthermore, Leisch has extensive knowledge on the real estate market in Washington, D.C. because his company provides services to real estate investors within the Washington metropolitan area. He is also an author and lecturer on commercial real estate investment. Accordingly, given Leisch's education, skills, and experience, the Court finds that Leisch is qualified to give his opinion on the value AAJ received from its deal with MEPT and the value AAJ would have received in its deal with Wachovia. The fact that he is not a licensed appraiser will properly go to the weight of his testimony, not its admissibility. *See* 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure: Evidence* § 6265 (3d ed 1997).

Wachovia also argues that Leisch is not qualified to testify about the value of AAJ's lost tribute rights. This argument also fails. Leisch has consulted on tribute rights in the past, and he researched tribute rights for comparable buildings in Washington, D.C. The fact that Leisch has not "valued" tribute rights before does not automatically disqualify him from offering his opinion on their value. Rather, Leisch's lack of direct experience will go to the weight of his testimony, not its admissibility. Accordingly, Leisch is qualified to testify about the value of AAJ's lost tribute rights.

2. **Leisch's "Equity Value" Calculation Is Sufficiently Reliable**

Wachovia argues that Leisch's equity value calculation is unreliable and produces speculative results for six reasons: (a) Leisch calculates damages over a twenty-year period; (b) Leisch uses a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in his calculations; (c) Leisch uses a ▉▉ rent increase in his calculations; (d) Leisch's calculation of the twenty-year sale proceeds is methodologically incorrect; (e) Leisch errs in his computation of the present value of AAJ's initial equity contribution; and (f) Leisch's conclusions are not shared by others appraisers. The Court agrees with AAJ and finds that Wachovia's criticisms go to the weight a jury should afford Leisch's damage report, not its admissibility.

### a. *Leisch's Twenty-Year Damage Period*

Wachovia contends that Leisch's use of a twenty-year damage period renders his calculations unreliable because standard appraisal practice is to use five or ten-year income periods. AAJ agrees that most appraisals are for ten-year periods. There is no rule, however, that states a damage period cannot be greater than ten years.[2] Indeed, the text relied upon by Wachovia's expert notes that projection periods will vary with different investments and investors. (Opp'n at 30 (citing Appraisal Institute, *The Appraisal of Real Estate* 522 (13th ed. 2008).)

Wachovia points out that a twenty-year projection increases the likelihood of unforeseeable market events and assumes hard to predict factors such as interest rates and financing structure. Leisch, however, frequently advises clients on projected interest rates and

---

[2] Wachovia's reliance on a case from the Court of Appeals of New York is misplaced. There the court found that a twenty-year damage projection was inherently speculative because the damages concerned predicting profits in the entertainment field, which is much more speculative than investment in an office building. *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 263 (1986).

has thirty years of experience monitoring interest rates and real estate market trends. He did not pick a random, arbitrary interest rate. In assuming an 8% interest rate, Leisch relied upon a historical average of commercial mortgage commitments. (Pls.' Ex. 84.) Furthermore, Leisch's assumption of an interest-only loan does not render his opinion unreliable. Wachovia is free to challenge his financing structure before the jury, which will then determine if Leisch's calculation is credible.

Accordingly, the Court finds that Wachovia's argument goes to weight, and not admissibility. Wachovia's contention fails to challenge the actual method used by Leisch, the discount cash flow analysis, and focuses only on the time period used in that model. The discount cash flow analysis is often used by investors, and Wachovia used this method when it decided to loan AAJ the funds for the building. Thus, it is for the jury to decide whether Leisch's twenty-year time period is reliable when used in a discount cash flow analysis.



███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████
███████████████████████████████
███████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
████████████████████████.

    *c.*    ***Leisch's ▇▇▇ Rent Growth Projection***

Wachovia argues that Leisch's use of a ▇▇▇ rent growth projection, instead of a ▇▇▇ growth projection, renders his projection so speculative that it is unreliable as a matter of law. Leisch used ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ results in an estimate that is necessarily speculative. (Pls.' Ex. 89.) In addition, Leisch checked his projection against the method that Wachovia's expert would have used and found that the figures were similar. (Pls.' Ex. 85.) Accordingly, the Court finds that Leisch's rent growth projection does not render his analysis unreliable.

    *d.*    ***Leisch's Calculation of the 20-Year Sales Proceeds***

Wachovia next challenges Leisch's use of data from year twenty-two to calculate the

12

sales proceeds in year twenty. Leisch used data from year twenty-two because significant lease rollover projections in years twenty and twenty-one artificially deflated net operating income for those years. He explained that a real-world investor would use the next normalized year, which is year twenty-two, and deflate and capitalize that year to calculate sale price. (Pls.' Ex. 85.) Indeed, in its reply, Wachovia concedes that appraisers often go to the next normalized year when there is significant lease rollover at the end of a projection. (Reply at 22-23.) Thus, Leisch's calculation of the 20-year sale proceeds does not render his report unreliable.

### e. *Leisch's Calculation of AAJ's Initial Equity Contribution*

Wachovia argues that "Leisch incorrectly accounts for the cost of AAJ's initial equity contribution by subtracting the cost from the building sale proceeds in year 20." (Mot. at 32.) The Court finds that this argument is without merit because Leisch subtracted the cost from the building sale proceeds in year 20 of both the AAJ-owned scenario and the MEPT-owned scenario. Because he did the same calculation in both models and because his damage model represents the difference between the two scenarios, it is irrelevant at what point in time he subtracted AAJ's initial equity contribution.

### f. *Leisch's Calculations Are Comparable to the Calculations of Appraisers*

Wachovia's final argument with respect to Leisch's equity value method is that his model differs from the models used by other appraisers of the building. Because Leisch used a different method than Wachovia's expert does not mean that Leisch's method is unreliable. Leisch primarily used the same inputs as other appraisers, but assigned different values to some of those inputs based on his experience and research. Accordingly, the Court finds that Leisch's method is sufficiently reliable to be admitted.

### 3. Leisch's "Tribute Rights" Assessment Is Sufficiently Reliable

Wachovia contends that Leisch's valuation of tribute rights damages is speculative and unreliable because Leisch did not use an established methodology when calculating tribute rights damages. Wachovia' expert stated that the appropriate methodology would be to research recent naming rights donations and talk with market participants. (Pls.' Ex. 89.) Leisch did this by looking at the recent naming of the National Academy of Science and Hillel buildings in downtown Washington, D.C. (Pls.' Ex. 84.) Wachovia notes that those organizations have tax exempt status and that AAJ does not. As a result, Wachovia argues AAJ is less likely to obtain tribute rights donations. The difference in tax status between those organizations and AAJ, however, is one that goes to weight, not admissibility.

In addition, Wachovia relies on a method for calculating lost contributions "suggested by *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997)." (Mot. at 34.) There, the court stated that one way in which "Samaritan Inns could have demonstrated permanent losses [was] by presenting evidence that particular contributors who might otherwise have made contributions." *Samaritan Inns*, 114 F.3d at 1237. AAJ has not produced a list of contributors who might otherwise have made contributions. The court in *Samaritan Inns*, however, was only making a suggestion of one way to prove lost contribution damages. In addition, Samaritan Inns did not involve naming rights donations. Thus, the lack of a list of potential donors goes to the weight of Leisch's calculation, not its admissibility.

Wachovia also argues that Leisch's tribute rights calculation is inadmissible because he relied upon ███████████████████████████████████. In support of this argument, Wachovia relies upon cases in which courts excluded projections of lost profits. *See*

14

*Celebrity Cruises v. Essef Corp.*, 434 F. Supp. 2d 169, 183-84 (S.D.N.Y. 2006). In *Celebrity Cruises*, the expert's lost profit estimate was excluded because it was based solely on the company's profit projection. *Id.* at 184. Here, Leisch relied not only upon information from ███████████████████████████████████, but also upon his study of comparable naming rights. As a result, Leisch had information from enough sources to make a reliable estimate of AAJ's lost tribute rights.

Wachovia next contends that there is evidence in the record that demonstrates that ███ ████████████████████████████. This evidence has no bearing on the admissibility of Leisch's report. Rather, it goes to the weight the jury should afford to his report. Similarly, Wachovia's final contention that █████████████████████████████ goes to the weight of Leisch's estimate. The fact ████████████████████████████████ ████████ does not mean that others would not have been willing to make a naming rights donation. Accordingly, the Court concludes that Leisch's tribute rights estimate is sufficiently reliable to be before a jury.

### 4. Leisch's Opinions Will Be Helpful to the Jury

The last inquiry the Court must make as gatekeeper is whether Leisch's report will be helpful to the jury. FED. R. EVID. 702. Having found that Leisch is a qualified expert and that his opinions are reliable, the Court concludes that Leisch's report will be helpful to the jury in its determination of AAJ's damages. Wachovia's arguments that Leisch's damages are barred by law will be addressed when the Court rules on Wachovia's motion for summary judgment, which raises the same issues.

### III. CONCLUSION

For the reasons set forth above, Wachovia's motion to exclude the expert report and testimony of Gregory Leisch shall be denied. A separate order shall issue this date.


12/8/09 /s/
DATE ROYCE C. LAMBERTH
CHIEF JUDGE